UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

CLARK R. HUFFMAN, et al.,          :          Civil Action No. 10-cv-5135
             Plaintiff,          :
                                :
      v.          :
                                  :
THE PRUDENTIAL INSURANCE  COMPANY          :
OF AMERICA,          :
             Defendant.          :

_____

**MEMORANDUM OPINION AND ORDER**
**Motion of Plaintiffs for Leave to File Amended Complaint (ECF No. 90) – Granted**

**JOSEPH F. LEESON, JR.**                              **July 20, 2015**
**United States District Judge**

## I.      Introduction

Before the court is Plaintiffs' Motion for Leave to File an Amended Complaint, which

defendant, The Prudential Insurance Company of America, opposes. For the reasons that follow,

the motion will be granted.

## II.      Background and Procedural History

This is a putative class action alleging ERISA violations. The original complaint

summarized the action as follows:

> The action arises out of Prudential's practice of investing death benefits due under
> ERISA-governed employee benefit plans insured by Prudential for Prudential's
> own account without accounting fully to the beneficiaries for the profits
> Prudential earns through such investments. Plaintiff's assert that this practice
> violates 29 U.S.C. § 1104(a)'s requirement that plan fiduciaries, such as
> Prudential, discharge their duties with respect to ERISA plan solely in the
> interests of the plans' participants and beneficiaries, and 29 U.S.C. § 1106(b)'s
> prohibition against plan fiduciaries dealing with plan assets in their own interest

or for their own account. Plaintiffs bring this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin the practice and to obtain other appropriate equitable relief to redress Prudential's violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106.

Complaint, ¶ 2, doc. 1.

The factual basis for the claims is as follows: Defendant, an insurance company, issues group life insurance policies to fund ERISA-governed employee benefit plans. Plaintiffs and members of the proposed class are policy and plan beneficiaries. Upon the death of an insured, rather than tendering a check for the amount of the death benefit, Prudential advises beneficiaries that the proceeds will be available in a Prudential Alliance Account. Prudential does not actually fund these accounts until a draft is drawn on the account and presented for payment, whereupon Prudential transfers funds to the account to cover the draft. In the interim, Prudential retains and invests the proceeds for its own benefit, setting the interest rate on uncollected proceeds sufficiently low that it profits. Prudential does not disclose this practice to beneficiaries. According to plaintiffs, this is a violation of Prudential's fiduciary duty under ERISA, and any benefit it derives from its investments properly belong to the beneficiaries of the plans, not Prudential.

On May 9, 2011, defendant answered the complaint. Its subsequent motion for judgment on the pleadings was denied. Discovery was completed and a motion for class certification filed and fully briefed. Additionally, defendant filed a motion for summary judgment. On April 20, 2012, the case was placed in suspense – by agreement of the parties and the court – pending a decision on defendant insurer's motion for summary judgment in a similar case. In that case, summary judgment was granted in favor of the insurer. *Edmonson v. Lincoln Nat'l. Life Ins. Co.*, 899 F.Supp.2d 310 (E.D. Pa. 2012). On appeal, the Third Circuit affirmed. *Edmonson*, 725 F.3d 406 (3d Cir. 2013). In May, 2014, the parties in this case advised that the Supreme Court had

denied Edmonson's petition for writ of certiorari, and asked that the case be returned to the active trial list. During the August 6, 2014 status conference, plaintiffs advised they intended to move to amend the complaint, and defendant advised it would oppose the motion. On August 22, 2014, plaintiffs filed a motion to amend the complaint, which is opposed. The proposed amended complaint summarizes the action as follows:

> This case addresses Prudential's practice of borrowing life insurance death benefits and investing these funds for its own account. Prudential acquires possession of these funds in the course of fiduciary service to ERISA-governed employee benefit plans. Prudential retains the profit flowing from the investments, with its debts to plan beneficiaries evidenced not by notes or traditional security instruments but by books of blank drafts that can be used by beneficiaries to draw on unfunded "accounts" at a clearing bank. It is a procedure used by Prudential and other life insurance carriers that the insurance industry calls "retained asset account," though others, including the United States Court of Appeals for the First Circuit, label as "no more than an IOU."

> Prudential's borrowing of ERISA plan death benefits violates ERISA because Prudential is a fiduciary and a party in interest as defined by 29 U.S.C. §§ 1002(14), (21), and the self-dealing inherent in its practices violates the duty of loyalty that ERISA imposes upon fiduciaries and violates ERISA § 406(a)(1)(C), which prohibits a fiduciary from causing the plan to engage in a transaction if the fiduciary knows that the transaction constitutes a direct or indirect furnishing of services between a plan and a party in interest.

Proposed amended complaint, ¶¶ 1, 2, Exhibit 1 to doc. no. 90.

The facts giving rise to the amended complaint are the same as those underlying the original complaint, with the exception that two new plaintiffs are added. These plaintiffs are not covered under the J.P Morgan Chase plan, but rather, are covered under the Con-Way plan.[1]

The amended complaint: (1) abandons the theory that retained assets are plan assets subject to ERISA fiduciary duties, and goes forward with the alternate theory that insurance

---

[1] The J.P. Morgan Chase plan, according to Prudential, permits the use of retained asset accounts. The Con-Way plan, according to plaintiffs, does not. *See* defendant's memorandum in opposition to motion to amend, doc. no. 91; plaintiff's reply, doc. no. 92. *See infra* for a discussion of appellate law governing the use of retained asset accounts.

contracts purchased by employers are plan assets; (2) abandons the prohibited transaction claim under ERISA § 406(b), and asserts a new prohibited transaction theory under ERISA § 406(a) based on a new theory that Prudential is a "party in interest" of the plans whose fiduciaries have purchased a Prudential contract to provide benefits, and has received unreasonable compensation; (3) adds a common law cause of action for breach of fiduciary duty with respect to profiting from investment of funds backing the retained asset accounts, to the extent ERISA does not govern this conduct; (4) withdraws the request for class certification under Rule 23(b)(1) and (2); and (5) eliminates the request for injunctive relief. Defendant opposes the amendment, on grounds that: (1) the amendment is futile, given the current state of the law governing use of retained asset accounts; and (2) the request for leave to amend was unduly delayed and the amendment, if permitted, will prejudice defendant.

## III.     Standard of Review – Motions to Amend Pleadings

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be given when justice so requires." Fed. R. Civ. P. 15(a). The decision whether to grant leave to amend is within the sound discretion of the court, but it is well-settled that such leave is to be liberally granted. *Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990). According to the United States Supreme Court:

> [i]n the absence of any apparent of declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

*Lindsley v. Girard Sch. Dist.*, 213 F.Supp.2d 523, 528 (W.D. Pa. 2002), quoting *Foman v. Davis*, 371 U.S. 178, 183 (1962).

"[P]rejudice to the nonmoving party is the touchstone for the denial of an amendment." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006), quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). "Prejudice means 'undue difficulty in prosecuting [or defending] a law suit as a result of a change in tactic or theories on the part of the other party.'" *Cummings v. City of Phila.*, 2004 WL 906259, at *3 (E.D. Pa., Apr. 26, 2004) (citation omitted). A defendant may not merely claim prejudice, but "must establish that it would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered" had the amendment come sooner. *Synthes Inc. v. Marotta*, 281 F.R.D. 217, 228 (E.D. Pa. 2012).

Prejudice must accompany delay, where amendment is opposed based on the passage of time, as even a lengthy delay, without more, is insufficient to justify denial of leave to amend. *Arthur*, 434 F.3d at 204 (citation omitted). *See also Tabon v. Univ. of PA Health System*, 2012 WL 2953307, at *2 (E.D. Pa., July 20, 2012) (citing cases). In cases where delay is raised as a basis for denial, "'the obligation of the district court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reasons for the delay.'" *Synthes*, 281 F.R.D. at 226, quoting *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988).

Leave to amend may also be denied where amendment would be futile. *Lorenz v. CSX Co.*, 1 F.3d 1406, 1414 (3d Cir. 1993). An amendment is futile where the proposed amended pleading would not withstand a motion to dismiss. *Sunoco, Inc. v. Praxair, Inc.*, 2001 WL 438419, at *1 (E.D. Pa., Apr. 30, 2001) (citation omitted). Thus, where the non-moving party argues that the proposed amendment would be futile, the proposed pleading must be evaluated under the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  To survive a

motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Notably, "given the liberal standard for the amendment of pleadings, however, 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile. . . . If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." *Synthes*, 281 F.R.D. at 229 (emphasis in original).

## IV.  <u>Appellate Decisions Addressing Use of Retained Asset Accounts</u>

Defendant argues that, in light of *Edmonson*, plaintiffs cannot state a viable ERISA claim based on the investment of assets backing retained asset accounts, notwithstanding the label placed on the practice, and that therefore, the proposed amendment is futile.

In *Edmonson*, the issue was whether the insurer breached its fiduciary duty under ERISA by paying benefits by means of a retained asset account, and whether the insurer was acting as an ERISA fiduciary when it held and reinvested for its own profit funds backing retained asset accounts. In this case of first impression, the Third Circuit held, *inter alia:* (1) defendant was acting as a fiduciary when it chose to pay plaintiffs via a retained asset account; (2) defendant did not breach its fiduciary duty under ERISA by selecting the retained asset account as a means of payment; and (3) defendant was not acting as an ERISA fiduciary when it invested the funds backing the retained asset accounts.

As to the first two issues, selection of the method of payment is governed by ERISA when it involves the exercise of discretion, and not merely implementation of instructions

outlined, for example, in a policy. In such circumstances, it is not a ministerial act. It also involves exercise or control over plan assets, again bringing it under ERISA. However, because ERISA does not specify a method of payment of benefits, and because retained asset accounts are not necessarily inconsistent with ERISA, an insurer does not breach a fiduciary duty by choosing the retained asset account as a method of payment where, as in Edmonson, the policy is silent on this issue.

As to the third issue, the Third Circuit held that where no particular method of payment is specified in the policy, establishment of the retained asset account constitutes payment, because the beneficiary, upon establishment of the account, has control of the money and can withdraw all of it immediately. Payment having been made, the insurer's fiduciary duties are extinguished and its conduct is no longer subject to ERISA. The insurer's relationship with the beneficiary is that of debtor-creditor at that point. The assets in the accounts are no longer plan assets, because the beneficiary is the only one with ownership interest in the assets. Therefore, investment of these assets is not governed by ERISA.

The holding in *Edmonson* was based on policy language that was silent as to the method of payment.   Prior to *Edmonson*, the First Circuit had held in *Mogel v. Unum Life Ins. Co. of Am.*, 547 F.3d 23 (1st Cir. 2008) (vacating order dismissing action for failure to state a claim and remanding for further proceedings) that where the policy required payment of proceeds in "one lump sum," the insurer that chose retained asset accounts as method of payment and invested funds backing those accounts breached its fiduciary duties under ERISA by retaining funds clearly intended to be distributed to beneficiaries. After *Edmonson*, the First Circuit revisited the issue in a case in which the insurance contract specifically authorized the use of retained asset accounts. *See Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 50 (1st Cir. 2014) (affirming

in relevant part award of summary judgment and judgment following bench trial). In these circumstances, the First Circuit held that the assets backing the accounts were not ERISA-governed plan assets, and that the insurer fully discharged its ERISA duties upon establishment of the accounts. *Id.* at 57-58. The *Merrimon* court also noted that "[t]he [Department of Labor] has stated explicitly that a life insurer discharges its fiduciary duties when it redeems a death-benefit claim through the establishment of an RAA as long as that method of redemption is called for by the plan documents." *Id.* at 58.

Most recently (and after plaintiffs filed their motion for leave to amend), the First Circuit again revisited the issue in a case in which beneficiaries received their benefits via retained asset accounts under an insurance contract that did not specifically authorize the use of the accounts, but provided that benefits "may be payable by a method other than a lump sum." *Id.* at *3. *See Vander Luitgaren v. Sun Life Assurance Co.*, 2014 WL 4197947 (1st Cir., Aug. 26, 2014)(affirming award of summary judgment). There, plaintiffs had argued that "a mode other than a lump sum [is permissible] only as long as the choice of an alternative does not benefit Sun Life." *Id.* at *4. The court rejected this assertion: "A better reading of the phrasing is that [the insurer] can discharge its obligations to the beneficiary by paying the promised benefit through any one of a range of recognized payment modalities" so long as "the chosen modality does not unfairly diminish, impair, restrict, or burden the beneficiary's rights. . . ." *Id.* The court also rejected plaintiff's argument that the insurer's receipt of investment earnings on retained assets violated ERISA: "ERISA section 404(a) does not require a fiduciary to don the commercial equivalent of sackcloth and ashes." *Id.*

Seemingly, then, whether *Edmonson* controls depends on the Prudential policy language as to payment of benefits. It is of note, however, that the Second Circuit has looked to other

documents – specifically a summary plan description – to find that the use of retained asset accounts as a method of payment was not in violation of ERISA, and investment of funds backing them not subject to the insurer's fiduciary duties under ERISA. *See Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 102 (2d Cir. 2011)(affirming dismissal for failure to state a claim). *Faber* preceded *Edmonson*. In *Faber*, beneficiaries received their benefits via retained asset accounts under a summary plan description that specifically authorized the use of such accounts. Under these circumstances, the Second Circuit held that the assets backing the accounts were not ERISA-governed plan assets, and the insurer was not a fiduciary with respect to the funds backing the retained asset accounts because it discharged its duty upon establishment of the accounts.

**V.**    **Analysis**

    **A.**    **The Proposed Amendment is not Clearly Futile**

According to defendant, any amendment plaintiffs may propose seeking imposition of liability under ERISA based on an insurer's decision to pay benefits using retained asset accounts, and its investment of funds backing those accounts, is futile in light of *Edmonson*. Plaintiff counters that defendant's interpretation of the holding in *Edmonson* is too broad, and that *Edmonson's* holding is limited to its facts – the use of retained asset accounts where the policy is silent as to method of payment. Plaintiff further argues that the allegations in the amended complaint more closely resemble *Mogel*, in which the First Circuit held that the decision to pay benefits by means of  retained asset accounts, and then invest the funds backing those accounts, violated relevant provisions of ERISA where the policy required payment in one lump sum.

According to the amended complaint[2], the policy at issue states that benefits are "normally paid to the Beneficiary in one sum." Amended complaint, ¶ 17. It also includes language permitting a beneficiary to arrange a "Mode of Settlement" by so requesting in writing to defendant. "Mode of Settlement" is defined as "payment other than in one sum." *Id.* It is alleged that Prudential "did not pay the life insurance benefits to Plaintiffs in one sum or give Plaintiffs any choice concerning the mode of settlement." *Id.* at 18. There are no allegations in the proposed amended complaint as to language included in any related documents, such as summary plan documents, nor are such documents attached to the proposed amended complaint. *See id.*, generally.

According to the allegations in the proposed amended complaint, the policy at issue is not silent as to method of payment. Moreover, as alleged, Prudential acted in a manner inconsistent with the requirements of the policy when it established retained asset accounts in the absence of a request to vary from the "normal" payment scheme from the beneficiary. Thus, as stated, the amended complaint is not clearly futile, and denial of leave to amend would be improper. *Synthes*, 281 F.R.D. at 229.

In its opposition to the proposed amendment, defendant refers to the J.P. Morgan Chase and Con-Way plan documents. *See, e.g.*, defendant's memorandum in opposition at 9; response to plaintiffs' notice of supplemental authority, doc. no. 98. These documents are not part of the record before the Court at this point in time. Arguments referring to and based on plan

---

[2] "In determining whether the proposed amendment states a plausible claim, the court must consider only those facts alleged in the proposed amended complaint, accepting the allegations as true and drawing all logical inference in facor of Plaintiffs." *Mergliano v. MGC Mortgage, Inc.*, 2011 WL 5105440, at *2 (E.D. Pa., Oct. 26, 2011), citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (other citations omitted).

documents are more properly reserved for summary judgment. Defendant may raise the arguments presented here again in that context. [3]

### B.    Defendant Will not be Prejudiced by the Amendment

Defendant argues that undue delay preceded the request for amendment. Plaintiffs counter that any delay is attributable to the agreed-to stay of proceedings pending a decision in *Edmonson*. The procedural history of the case supports plaintiffs' position. *See supra*. Defendant further argues that amendment should have been accomplished in 2011 following the denial of defendant's motion for judgment on the pleadings – when plaintiffs were invited by the Court to amend their pleadings and chose not to. *See* doc. no. 39. Plaintiffs counter that the proposed amendment reflects the law as announced in *Edmonson* years later, dismissing claims that are no longer viable and adding others that, at this stage of the litigation, appear plausible. *Sunoco*; *Twombly*; *Iqbal*, *supra*. The Court agrees that, under these circumstances, the delay in requesting amendment cannot be deemed "undue" or the result of a "dilatory tactic." Defendant argues that it will be required to complete yet more discovery when extensive discovery has been completed already.[4] However, the need for additional discovery due to the amendment does not, without more, prejudice the non-moving party. *Synthes*, 281 F.R.D. at 228.

As to prejudice, plaintiffs emphasize that Prudential merely states – but does not demonstrate by means of affidavit or other evidence - that it will be prejudiced by, for example, fading memories, destruction of documents, or unavailability of witnesses due to passage of

---

[3] Defendant also urges denial of amendment insofar as it adds a common-law breach of fiduciary duty claim. That aspect of defendant's motion is also denied without prejudice.

[4] According to defendant, the discovery completed is as follows: "Both Plaintiffs and Prudential prepared and served initial disclosures pursuant to Rule 26(a)(1). Plaintiffs served nineteen interrogatories and thirty-eight requests for production of documents to which prudential provided written responses and produced over 50,000 pages of documents. Plaintiffs also served six deposition notices (five of which were later amended), and Prudential produced five witnesses who provided deposition testimony on a broad range of topics. Prudential has also taken its own discovery, deposing the named plaintiffs and serving document requests and interrogatories." Defendant's memorandum in opposition, at 4, doc. no. 91.

time. *Synthes*, 281 F.R.D. at 228 (citation omitted) ("Because Defendants have offered nothing to show that they will be deprived of the opportunity to present facts or evidence, the Court finds no clear prejudice. In turn, absent a showing of prejudice, the mere fact that the case will be more complicated than before is an insufficient basis on which to deny leave to amend").

**VI.**   **Conclusion**

Defendant has not clearly demonstrated undue delay arising from bad faith or dilatory motives and has not established that it will suffer prejudice if the proposed amendment is permitted. Finally, the proposed amendments are not clearly futile. Accordingly, leave to amend is granted and the proposed amended complaint, Exhibit A to plaintiff's motion, is deemed filed as of the date of the accompanying order.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**