## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARK R. HUFFMAN, BRANDI K.** | : | |
| **WINTERS, PATRICIA L.** | : | |
| **GRANTHAM, and LINDA M. PACE,** | : | |
| **individually and on behalf of a class** | : | |
| **of all others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIV. NO.  10-cv-05135-EL** |
| **vs.** | : | |
| | : | **FIRST AMENDED** |
| **THE PRUDENTIAL INSURANCE** | : | **CLASS ACTION** |
| **COMPANY OF AMERICA,** | : | **COMPLAINT** |
| | : | |
| **Defendant.** | : | |

Plaintiffs Clark R. Huffman, Brandi K. Winters, Patricia L. Grantham and

Linda M. Pace ("Plaintiffs") bring this action on behalf of themselves and a class of

similarly situated individuals against the Prudential Insurance Company of America

("Prudential"), showing the Court the following:

## INTRODUCTION

1.    This action involves claims brought pursuant to the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). This

case addresses Prudential's practice of borrowing life insurance death benefits and

investing these funds for its own account. Prudential acquires possession of these

funds in the course of fiduciary service to ERISA-governed employee benefit plans.

Prudential retains the profit flowing from the investments, with its debts to plan

-2-

beneficiaries evidenced not by notes or traditional security instruments but by books of blank drafts that can be used by beneficiaries to draw on unfunded "accounts" at a clearing bank. It is a procedure used by Prudential and other life insurance carriers that the insurance industry calls "retained asset accounts," though others, including the United States Court of Appeals for the First Circuit, label as "no more than an IOU."

2.  Prudential's borrowing of ERISA plan death benefits violates ERISA because Prudential is a fiduciary and a party in interest as defined by 29 U.S.C. §§ 1002(14), (21), and the self-dealing inherent in its practices violates the duty of loyalty that ERISA imposes upon fiduciaries and violates ERISA § 406(a)(1)(C), which prohibits a fiduciary from causing the plan to engage in a transaction if the fiduciary knows that the transaction constitutes a direct or indirect furnishing of services between the plan and a party in interest.

## PARTIES, JURISDICTION AND VENUE

3.  Plaintiff Clark R. Huffman is a resident of the State of Iowa.

4.  Plaintiff Brandi K. Winters is a resident of the State of Missouri.

5.  Plaintiff Patricia L. Grantham is a resident of the State of Missouri.

6.  Plaintiff Linda M. Pace is a resident of the State of Rhode Island.

-3-

7.     Prudential is a life insurance company that conducts business, through its employees and agents, throughout the United States, including within the Eastern District of Pennsylvania. It is subject to the jurisdiction of this Court.

8.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C.§ 1132(e)(1) and 28 U.S.C. § 1331, because this action involves claims brought by beneficiaries pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) to obtain appropriate equitable relief to redress alleged violations of ERISA's fiduciary standards and prohibited transaction rules.

9.     Venue lies in this district and division pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because, among other things, (a) Prudential may be found in this district, (b) the violations alleged herein took place, in whole or in part, in this district, (c) group insurance claims are filed with Prudential's Group Life Claim Division, P.O. Box 8517, Philadelphia, Pennsylvania 19101, located in this district, and (d) recipients of Claim Settlement Confirmation forms are directed to correspond with Prudential Alliance Account Services, P.O. Box 41582, Philadelphia, Pennsylvania 19176, located in this district.

## PRUDENTIAL'S HANDLING OF
## PLAINTIFFS' LIFE INSURANCE CLAIMS

10.    Susan M. Winters was a participant in an employee welfare benefit plan that was sponsored by J.P. Morgan Chase ("J.P. Morgan Plan") and insured by a group life insurance policy ("J.P. Morgan Policy") issued by Prudential.   Ms. Winter's children, Clark R. Huffman and Brandi K. Winters, are two of the beneficiaries of the life insurance benefit provided under the J.P.Morgan Chase Plan and Policy.

11.    Stephen G. Grantham was a participant in an employee welfare benefit plan that was sponsored by Con-Way, Inc. ("Con-Way Plan") and insured by a group life insurance policy ("Con-Way Policy") issued by Prudential.   Mr. Grantham's wife, Patricia L. Grantham, is the beneficiary of the life insurance benefit provided under the Con-Way Plan and Policy.

12.    Michael A. Pace also was a participant in the Con-Way Plan.   Mr. Pace's wife, Linda M. Pace, is the beneficiary of the life insurance benefit provided under the Con-Way Plan and Policy.

13.    Susan M. Winters died on August 14, 2008.

14.    Stephen G. Grantham died on December 13, 2010.

15.    Michael A. Pace died on February 15, 2010.

16.    Following the deaths of Ms. Winters and Messrs. Grantham and Pace,

Plaintiffs submitted, or caused to be submitted, claims for life insurance benefits to

Prudential in accordance with the terms of their respective plans and policies.

17.    The J.P. Morgan and Con-Way Policies both provide:

## MODE OF SETTLEMENT RULES

The rules in this section apply to Employee Life Insurance payable on
account of your death.... But these rules are subject to the Limits on
Assignments section.

"Mode of Settlement" means payment other than in one sum.

Employee Life Insurance is normally paid to the Beneficiary in one
sum. But a Mode of Settlement may be arranged with Prudential for all
or part of the insurance, as stated below.

**Arrangements for Mode of Settlement:** You may arrange a mode of
Settlement by proper written request to Prudential. If, at your death, no
Mode of Settlement has been arranged for an amount of your Employee
Life Insurance, the Beneficiary and Prudential may then mutually agree
on a Mode of Settlement for that amount.

18.    Prudential approved Plaintiffs' claims, but did not pay the life insurance

benefits to Plaintiffs in one sum or give Plaintiffs any choice concerning the mode

of settlement.    Instead, days after approval of the claim, Prudential informed

Plaintiffs that their claims had been approved and would be settled by mailing to

each Plaintiff a book of blank drafts. By doing so, Prudential exercised control over

the ERISA plan benefits due Plaintiffs and loaned those death benefits to itself,

-6-

holding Plaintiffs' death benefits in the group insurance portfolio of its general account.

19.    Prudential credited interest on the debt it owed Plaintiffs at a rate determined by Prudential's Interest Rate Crediting Committee.

20.    Prudential reserved the right to change the crediting rate as often as once a month.

21.    When Prudential lends to itself the death benefits due its beneficiary, it holds the beneficiary's death benefits in the group insurance portfolio of its general account until it is called upon by the bank that provides draft-clearing services for Prudential to transfer funds to that bank to cover drafts drawn on the unfunded "Alliance Account." In the interim, Prudential invests the beneficiary's funds and keeps for itself the difference or "spread" between the amount it accrues by self-dealing in its beneficiary's funds and the amount of interest it credits to its beneficiary.

22.    Prudential sets the crediting rate so as to maximize its profits by setting the rate as far below the amount it earns investing the beneficiaries' funds as possible without causing widespread withdrawals by beneficiaries.

-7-

23.     Prudential did not disclose to the Plaintiffs the amount of profit that it reaped from the spread between the amount it gained by investing their benefits for its own account and the amount of interest it credited to them.

24.     Upon information and belief, Prudential did not disclose to the sponsors or administrators of the J.P. Morgan and Con-Way Plans the amount of profit it expected to accrue and did accrue from the spread between the amount it gained investing Plaintiffs' benefits and the benefits of other beneficiaries of those plans for its own account and the amount of interest it credited to the plans' beneficiaries on the unpaid death benefits it owed to them.

## PRUDENTIAL'S PRACTICES GENERALLY

25.     At all times relevant to this action, Prudential sold group life insurance policies ("ERISA Policies") similar to the policies it sold to the J.P. Morgan and Con-Way Plans to other ERISA-governed employee welfare benefit plans ("Plans").

26.     These ERISA Policies contain Mode of Settlement provisions that are identical or substantially similar to the Mode of Settlement provisions contained in the J.P. Morgan and Con-Way Policies quoted above in paragraph 17.   These provisions provide in pertinent part that the life insurance benefit is normally paid to the beneficiary "in one sum."

27. When Prudential approved claims for death benefits due under these ERISA Policies for beneficiaries who are members of the proposed class, Prudential did not pay the benefits in one sum. Instead, Prudential loaned the beneficiaries' plan benefits to itself, mailed a book of blank drafts on an unfunded account to its beneficiaries and handled the beneficiaries' claims the same way it handled the Plaintiffs' claims.

28. When Prudential loans the ERISA plan death benefits to itself, it holds these borrowed funds in the group insurance portfolio of its general account until it is called upon by the bank that provides draft-clearing services for Prudential to transfer funds to the bank to cover drafts drawn on the debts it owes to the ERISA plan beneficiaries. In the interim, Prudential invests the beneficiaries' funds and keeps for itself the spread between the amount it gains by investing the beneficiaries' funds and the amount of interest it credits to the beneficiaries.

29. Upon information and belief, Prudential does not disclose to the Plans' sponsors, administrators, participants or beneficiaries the amount of profit it realizes from its investments of funds that it owes ERISA plan beneficiaries, nor does it negotiate with the Plans in advance as to the amount of income it will receive through this practice.

-9-

30.    Prudential's practice of lending to itself death benefits due ERISA plan beneficiaries, with an empty interest-bearing "account" established for the beneficiary at a bank and the beneficiary being issued a book of blank drafts with which to draw on the claim proceeds through the "account" is a practice that was devised by a former MetLife executive named Gerry Goldsholle in order to allow MetLife to "hold onto death benefits" that it otherwise would have to pay out so that MetLife could continue to invest the funds for its own enrichment and "make a nice spread on the money."[2]

31.    This practice is profitable for insurers.   According to Goldsholle, "MetLife makes $100 million to $300 million a year from investment returns on the death benefits it holds." *Id.*

32.    According to the American Council of Life Insurers website, as of December 31, 2010, Prudential had more group life insurance in force than MetLife

---

[2] David Evans, *Fallen Soldiers' Families Denied Cash as Insurers Profit*, Bloomberg News, July 28, 2010, available at http://www.bloomberg.com/news/2010-07-28/fallen-soldiers-families-denied-cash-payout-as-life-insurers-boost-profit.html.

and was second to MetLife in the amount of group life insurance issued. *See*

https://www.acli.com/Tools/Industry%20Facts/Life%20Insurers%20Fact%20Book

/Documents/FB11Ranking.pdf (Tables 11.11 and 11.14).

## PRUDENTIAL'S FIDUCIARY STATUS

33.    Under ERISA § 3(21)(A), a person is a fiduciary with respect to a plan

to the extent:

> (i) he exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, ... or (iii) he
> has any discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1002(21)(A)(i), (iii).

34.    The actions subject to complaint in this case include Prudential's

decision to lend ERISA plan death benefits to itself, memorializing these debts with

an unfunded account that it euphemistically calls an "Alliance Account" instead of

paying to beneficiaries their death benefits in one sum, and Prudential's decisions to

invest the beneficiaries' benefits for its own account and keep for itself most of the

resulting gain.

35.    Prudential functioned as a fiduciary when it took the actions subject to

complaint for four independent reasons.

-11-

36.     First, Prudential had discretionary authority to take the actions pursuant to the terms of the Policies, which gave Prudential "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits," thus rendering Prudential a fiduciary under ERISA § 3(21)(A)(iii).

37.     Second, Prudential exercised discretionary authority and control in the management of the Plans when it took the actions subject to complaint because the actions were not compelled by the terms of the J.P. Morgan, Con-Way or other ERISA Policies, thus rendering Prudential a fiduciary under the first clause of subsection (i) of ERISA § 3(21)(A).

38.     Third, the J.P. Morgan Policy, the Con-Way Policy and other ERISA Policies are assets of the Plans. The policies were each purchased with plan assets. Each Plan is a party to its insurance contract with Prudential and has standing to sue Prudential to enforce payments of benefits due beneficiaries of these life insurance contracts. Each Plan has a property interest in its insurance contract with Prudential and a property interest in death benefits due to its beneficiaries. The death benefits due Plan beneficiaries are not exempted under the guaranteed benefit exemption. 29 U.S.C. § 1101(b)(2). Prudential exercised authority and control over these death benefits when it took the actions subject to complaint, thus rendering Prudential a

-12-

fiduciary with respect to the actions pursuant to the second clause of subsection (i) of ERISA § 3(21)(A).

39. Under the common law of trusts, fiduciary duties continue so long as a fiduciary continues to hold funds due its beneficiary. By retaining death benefits due its beneficiaries, Prudential continued to be a fiduciary to its beneficiaries under ERISA and thereafter under state law.

## PRUDENTIAL'S STATUS AS A PARTY IN INTEREST

40. "The term 'party in interest' means as to an employee benefit plan – (A) any fiduciary ... [and] (B) a person providing services to such plan[.] ERISA § 3(14), 29 U.S.C. § 1002(14).

41. Prudential is a party in interest pursuant to subsection (A) because it is a fiduciary for the reasons stated above.

42. Prudential is a party in interest pursuant to subsection (B) because it provided services to the Plans, including the J.P. Morgan and Con-Way Plans, by, *inter alia*, issuing insurance policies to the plans and administering claims due under the policies.

-13-

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this action as a class action on behalf of themselves

and all members of a class ("Class") that includes:

> All life insurance beneficiaries of ERISA-governed employee benefit
> plans that are insured by group life insurance policies issued by
> Prudential that provide for payment in "one sum" for whom Prudential
> established an "Alliance Account" between September 30, 2004, and
> the date when the Court decides Plaintiffs' motion for class
> certification. Excluded from the class are any beneficiaries who were
> given a choice and affirmatively elected to receive an Alliance Account.

44.    **Numerosity.** The Class includes approximately 137,000 members.

Joinder of all class members is impractical.

45.    **Commonality.** There are questions of law and fact common to the

Class, including without limitation:

    a.    Whether Prudential engaged in the actions subject to complaint;

    b.    Whether Prudential's retention of death benefits and mailing of a book

of blank drafts on an unfunded "account" constitutes payment of death benefits in

"one sum";

-14-

c.     Whether Prudential was functioning as a fiduciary under ERISA §
3(21)(A) when it engaged in the actions subject to complaint;[4]

d.     Whether Prudential's fiduciary duties continued under ERISA so long
as Prudential continued to retain the death benefits due its beneficiaries;

e.     Whether Prudential's fiduciary duties continued under state law so long
as Prudential continued to retain the death benefits due its beneficiaries;

f.     Whether Prudential is a "party in interest" within the meaning of
ERISA § 3(14);

g.     Whether the actions subject to complaint violate ERISA §§
404(a)(1)(A) and/or 406(a)(1)(C);

---

[4] This question encompasses several subsidiary questions, each of which is also
common to the claims of all class members. These questions include: (1) whether
Prudential had discretionary authority or responsibility to take the actions subject
to complaint; (2) whether Prudential exercised any discretionary authority or
control in the management of the plans when it took the actions subject to
complaint; (3) whether the policies are assets of the plans; and (4) whether
Prudential exercised any authority or control respecting management or disposition
of the policies or their proceeds when it took the actions subject to complaint.

-15-

h.     The amount by which Prudential was unjustly enriched through the actions subject to complaint; and

i.     The equitable relief that is appropriate to redress the actions subject to complaint, including whether Prudential should be ordered to disgorge the profits it has reaped through those actions.

46.     **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class. All of the claims are based on the same facts, practices and legal theories.

47.     **Adequacy of Representation.** Plaintiffs and their counsel will fairly and adequately represent the interests of the members of the Class. Plaintiffs do not have any interests that conflict with the interests of the members of the Class. Plaintiffs' attorneys possess the experience, expertise and resources necessary to prosecute this action as a class action.

48.     **Predominance.** The questions of law and fact common to class members predominate over any questions affecting only individual class members.

49.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy in this case, considering: (a) the fact that prosecution of separate actions by individual class members would not

-16-

be efficient or economically feasible due to the modest amount in controversy for individual class members; (b) the absence of any other pending litigation involving the claims asserted in this action; (c) the desirability of concentrating this action in this forum; and (d) the absence of any foreseeable difficulties in managing this action as a class action.

## COUNT 1

## VIOLATION OF ERISA § 404(a)(1)

50.    Paragraphs one through forty-nine are re-alleged and incorporated into Count 1.

51.    ERISA § 404(a)(1) requires ERISA fiduciaries to discharge their duties with respect to ERISA plans "solely in the interests of the participants and beneficiaries[,]" "for the exclusive purpose of providing benefits to participants and their beneficiaries[,]" and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(A), (D).

52.    Prudential breached the above-described duties that it owed to Plaintiffs and members of the Class by, *inter alia*, (a) creating Alliance Accounts for them instead of paying their benefits in one sum as required by the policies, (b)

-17-

borrowing their benefits, (c) investing the funds for its own account, and (d) keeping

for itself most of the resulting gain.

53.    As a direct and proximate result of Prudential's violations of ERISA §

404(a)(1), Prudential has been unjustly enriched in an amount equal to all profit

obtained by Prudential through the violations.

54.    Plaintiffs and all members of the Class are entitled to surcharge in

equity compelling Prudential to disgorge all profit it realized through the violations.

55.    Plaintiffs and all members of the Class are entitled to recover their

expenses of litigation, including reasonable attorney fees.

56.    Plaintiffs and all members of the Class are entitled to prejudgment

interest on the funds subject to disgorgement.

## COUNT 2

## VIOLATION OF ERISA § 406(a)(1)(C)

57.    Paragraphs one through forty-nine are re-alleged and incorporated into

Count 2.

58.    ERISA § 406(a)(1)(C) provides:

Except as provided in section 1108 of this title: (1) A fiduciary with
respect to a plan shall not cause the plan to engage in a transaction, if
he knows or should know that such transaction constitutes a direct or

-18-

indirect– ... (C) furnishing of ... services ... between the plan and a party in interest.

ERISA § 406(a)(1)(C); 29 U.S.C. § 1106(a)(1)(C).

59.    ERISA § 408(b)(2) provides relief from the foregoing prohibition for service contracts or arrangements between a plan and a party in interest if the contract or arrangement is reasonable, the services are necessary for the establishment and operation of the plan, and no more than reasonable compensation is paid for the services. 29 U.S.C. § 1108(b)(2).

60.    Prudential furnished services to the Plans, including insuring the Plans' obligations to provide life insurance benefits to qualified beneficiaries and administering claims for death benefits due under the Plans.

61.    The transactions in which Prudential agreed to furnish services to the Plans are prohibited by ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), unless they are exempt under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2).

62.    The transactions are not exempt under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2) because Prudential received more than reasonable compensation for its services through its self-dealing in the death benefits of ERISA plan beneficiaries.

63.    Prudential received more than reasonable compensation for its services because: (a) it controlled how much compensation it would receive from its investment of death benefits *via* its control over how the funds it retained were invested and how the resulting earnings were apportioned between itself and the beneficiaries, and (b) upon information and belief, the income that Prudential derived from the spread was not disclosed to, negotiated with, or approved by, responsible plan fiduciaries.

64.    Plaintiffs and all members of the Class are entitled to surcharge in equity compelling MetLife to disgorge all profit it realized from self-dealing in their death benefits.

65.    Plaintiffs and all members of the Class are entitled to recover their expenses of litigation, including reasonable attorney fees.

66.    Plaintiffs and all members of the Class are entitled to prejudgment interest on the funds subject to disgorgement.

## COUNT 3

## BREACH OF COMMON LAW FIDUCIARY DUTIES

67.    Paragraphs one through forty-nine are re-alleged and incorporated into Count 3.

-20-

68.    If ERISA-imposed fiduciary duties are deemed to end upon the mailing of a book of blank drafts but while Prudential continues to retain death benefits due its beneficiaries, then state law applies to the duties imposed upon Prudential as a fiduciary that has not divested itself of its beneficiaries' funds.

69.    Prudential's fiduciary duties to class members continue until Prudential has divested itself of their death benefits.

70.    Under controlling common law, Prudential is prohibited from profiting from self-dealing in the death benefits due its beneficiaries.

71.    Plaintiffs and all members of the Class are entitled to surcharge in equity compelling Prudential to disgorge all profit it realized from self-dealing in their death benefits.

72.    Plaintiffs and all members of the Class are entitled to recover their expenses of litigation, including reasonable attorney fees.

73.    Plaintiffs and all members of the Class are entitled to prejudgment interest on the funds subject to disgorgement.

## PRAYER FOR RELIEF

WHEREFORE, having stated their First Amended Class Action Complaint, Plaintiffs pray as follows:

-21-

a)     that the case be certified to proceed as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and that Plaintiffs and their attorneys be appointed to represent the Class certified by the Court;

b)     that the Court inquire into this matter and find that Prudential has violated ERISA in the ways alleged by Plaintiffs and has been unjustly enriched thereby;

c)     that the Court inquire into this matter and find that Prudential has breached its common law fiduciary duties in the ways alleged by Plaintiffs and has been unjustly enriched thereby;

d)     that the Court award Plaintiffs and the Class appropriate equitable relief to redress Prudential's violations of ERISA, including disgorgement of the profits that Prudential reaped through the violations;

e)     that the Court award Plaintiffs and the Class appropriate equitable relief to redress Prudential's breaches of its common law fiduciary duties, including disgorgement of the profits that Prudential reaped through such breaches;

f)     that Plaintiffs and the Class recover prejudgment and post-judgment interest at the maximum rates permissible at law or in equity;

-22-

g)      that Plaintiffs and the Class recover attorney's fees, costs and other recoverable expenses of litigation; and

h)      that Plaintiffs and the Class recover such other and further relief that the Court deems appropriate.

## NOTICE PURSUANT TO ERISA § 502(h)

In accordance with ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that a true and correct copy of this Complaint is being served upon the Secretary of Labor and the Secretary of Treasury via certified mail, return receipt requested.

Respectfully submitted,

/s/ Cary L. Flitter
Cary L. Flitter
FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, Pennsylvania 19072
(610) 822-0782
(610) 667-0552 (fax)

John C. Bell, Jr. (admitted *pro hac vice*)
Leroy W. Brigham (admitted *pro hac vice*)
BELL & BRIGHAM
457 Greene Street (30901)
Post Office Box 1547
Augusta, Georgia 30903-1547
(706) 722-2014

-23-

(706) 722-7552 (fax)

M. Scott Barrett (admitted *pro hac vice*)
BARRETT WYLIE, LLC
320 West 8th St., Suite 100 (47404)
P.O. Box 5233
Bloomington, Indiana 47407-5233
(812) 334-2600
(812) 336-5615 (fax)

Stuart T. Rossman (admitted *pro hac vice*)
Arielle Cohen (admitted *pro hac vice*)
THE NATIONAL CONSUMER LAW
CENTER
7 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
(617) 542-8010
(617) 542-8028 (fax)

**Attorneys for Plaintiffs**

-24-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Plaintiffs' First Amended Class Action Complaint** was filed and served upon opposing counsel on _____, _____, 2014, using the Court's Electronic Case Filing ("ECF") system, which will transmit a copy of the document to the following ECF participants:

James O. Fleckner
Alison V. Douglass
Goodwin Procter LLP
Exchange Place
Boston, MA 02109-2881
jfleckner@goodwinprocter.com
adouglass@goodwinprocter.com

Michael K. Isenman
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4432
misenman@goodwinprocter.com

Martin C. Bryce, Jr.
Ballard Spahr LLP
1735 Market Street - 51st Floor
Philadelphia, Pennsylvania 19103-7599
bryce@ballardspahr.com

/s/ Cary L. Flitter
Cary L. Flitter
**Attorney for Plaintiffs**