_____

CLARK R. HUFFMAN;                              :
PATRICIA L. GRANTHAM;                          :
LINDA M. PACE; and                             :
BRANDI K. WINTERS, *individually and*          :
on behalf of a class of all others similarly situated,   :
                                               :
                    Plaintiffs,                :
                 v.                            :          No. 2:10-cv-05135
                                               :
THE PRUDENTIAL INSURANCE COMPANY               :
OF AMERICA,                                    :
                                               :
                    Defendant.                 :

_____

# O P I N I O N

**Plaintiffs' Motion for Partial Summary Judgment, ECF Nos. 149-50-Granted in Part and Denied in Part**
**Defendant's Motion for Summary Judgment, ECF No. 151-Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                    **December 6, 2017**
**United States District Judge**


## I.    INTRODUCTION

    This case hinges on a narrow but subtle question: when the terms of a life insurance

policy included in an ERISA[1] plan provide that payment shall be made to the beneficiary in "one

sum," does the insurer violate ERISA by choosing to pay the beneficiary by giving him or her

access to a retained asset account, which allows the insurer to retain funds and earn interest on

them until the beneficiary withdraws them? Plaintiffs are the beneficiaries of life insurance plans

obtained by deceased family members, who worked for two separate companies, JPMorgan Bank

_____

[1]    *See* Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. §§ 1001-1461.

and Con-way Incorporated. Defendant Prudential Insurance Company of America contracted to provide the plans for both companies. When benefits became due, Prudential's default practice was not to send the beneficiaries a single check for the amount of benefits due, but instead to open a bank account, called an Alliance Account,[2] containing the amount of benefits due against which the beneficiaries could draw checks. This arrangement allowed Prudential to retain and invest the funds until drawn upon, and thereby make a profit. Plaintiffs contend that this means of payment violated Prudential's fiduciary duties under ERISA or, in the alternative, state law, and also violated ERISA's prohibited transaction provisions. The parties present cross-motions for summary judgment as to each of the three counts. First, the Court finds that the unambiguous language of the plan documents required payment in "one sum," that payment by giving the beneficiary access to a bank account does not satisfy this requirement, and that Prudential breached its fiduciary duties by establishing the accounts. Therefore, the Court grants summary judgment on liability in favor of Plaintiffs with respect to the breach of fiduciary duty claims under ERISA. Second, because issues of fact remain as to whether Prudential's arrangement violated ERISA's prohibited transaction provisions, this Court denies both parties' motions for summary judgment as to that claim. Third, the ERISA claim preempts the state law breach of fiduciary duty claims, and summary judgment is granted in favor of Prudential on that claim.

## II.   **BACKGROUND**

### A.  **Procedural Background**

Plaintiffs filed their Complaint on September 30, 2010, as a putative class action alleging ERISA violations. ECF No. 1. This case was placed in civil suspense from April 20, 2012,

---

[2]    Alliance Account is Prudential's proprietary name for the generic term "retained asset account."

through August 22, 2014, pending the decision of the Third Circuit Court of Appeals in

*Edmonson v. Lincoln Nat'l. Life Ins. Co.*, 725 F.3d 406 (3d Cir. 2013). Afterward, Plaintiffs filed

an amended class action complaint on July 22, 2015. ECF No. 103. In the three-count amended

class action complaint, Plaintiffs allege first that Prudential violated its fiduciary duties under

ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1). Second and in the alternative in the event that

ERISA does not apply, Plaintiffs allege that Prudential breached common law fiduciary duties.

Third, Plaintiffs allege that Prudential engaged in a prohibited transaction under ERISA Section

406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C). The Plaintiffs moved to certify a class, and the Court

denied certification on September 30, 2016, ECF Nos. 138-39, and denied reconsideration of its

decision on December 13, 2016. ECF No. 146. Plaintiff moved for partial summary judgment on

the issue of liability on February 16, 2017, ECF Nos. 149-50, and Defendant filed a motion for

summary judgment on the same date. ECF No. 151. After another period of civil suspense

culminating in an unsuccessful private mediation, the motions are ripe for decision.

**B. Factual Background**

Prudential contracted with two companies, JPMorgan Bank and Con-way Inc. to provide

group life insurance benefits to the two companies' employees. Plaintiff Clark R. Huffman and

his sister Plaintiff Brandi K. Winters were the beneficiaries of the life insurance benefits that

their mother received through the JPMorgan program. Statement of Material Facts (SMF) ¶ 2,

ECF No. 154-1.[3] The remaining two plaintiffs were beneficiaries under the Con-way plan:

Plaintiff Patricia L. Grantham and Plaintiff Linda M. Pace were the beneficiaries of the life

insurance benefits that their deceased husbands each received from Con-way. SMF ¶¶ 3-4.

---

[3] "Statement of Material Facts" generally refers to Plaintiffs' Responses to Prudential's
Statement of Material Facts, which incorporate Prudential's facts with identical paragraph
numbering. For simplicity's sake, the Court draws the undisputed facts from that document.

### 1. The JPMorgan Plan

The terms of the JPMorgan plan were established through a written plan document, called the Health & Income Protection Program for JPMorgan Chase Bank and Certain Affiliated Companies. SMF ¶ 6. As part of the plan, Prudential issued two group life insurance policies to JPMorgan. SMF ¶ 19. With respect to the means by which beneficiaries will be paid, or "settlement method," the JPMorgan Group Insurance certificates provide:

> **MODE OF SETTLEMENT RULES**
>
> The rules in this section apply to Employee Life Insurance payable on account of your death. But these rules are subject to the Limits on Assignments section.
>
> ***"Mode of Settlement" means payment other than in one sum.***
>
> ***Employee Life Insurance is normally paid to the Beneficiary in one sum.*** But a Mode of Settlement may be arranged with Prudential for all or part of the insurance, as stated below.
>
> Arrangements for Mode of Settlement: You may arrange a mode of Settlement by proper written request to Prudential. If, at your death, no Mode of Settlement has been arranged for an amount of your Employee Life Insurance, the Beneficiary and Prudential may then mutually agree on a Mode of Settlement for that amount.

SMF ¶ 20 (emphasis added); Def.'s Exs. 18-19. Pls.' Exs. 1-2, ECF No. 150.

One mode of settlement was the establishment of a retained asset account, which Prudential called an Alliance Account, for life insurance beneficiaries. SMF ¶ 13. When paid through an Alliance Account, the beneficiary receives a draft book that she can use to write drafts against the funds in the account; a beneficiary can obtain the full value of the account at any time by writing a draft to herself for the full account balance. SMF ¶ 14. Interest accrues on the account daily and is credited monthly. SMF ¶¶ 13, 15. Until the drafts written by beneficiaries clear, Prudential can invest the funds it holds, the "retained assets," and retain any profit or loss, minus the interest credited to the Alliance Accounts. ¶ 17.

JPMorgan updated the summary plan description (SPD) that applied to its plans effective January 1, 2008, to reflect the use of the Alliance Account:

**How Benefits Are Paid**

***Generally, benefits will be paid to your beneficiary through Prudential's Alliance Account.*** The Alliance Account® is a personalized interest-bearing account for beneficiaries of group life or AD&D [accidental death & dismemberment] insurance. Prudential will open an interest-bearing account in your beneficiary's name (or your name in the event of the accelerated benefit option) the next business day after the claim is paid. An Alliance Account® is not available for payments less than $10,000, payments to individuals residing outside the United States and its territories, and certain other payments. Such payments will be paid in a single lump-sum check.

SMF ¶ 24 (emphasis added); Def.'s Ex. 23, ECF No. 151-14. The JPMorgan Plan Document governing the JPMorgan plans states that "Each Plan shall be evidenced by an SPD describing its terms and conditions, which are hereby incorporated into the Program by reference.... To the extent that terms of this Program document and an SPD or Plan document conflict, the terms of this document shall apply." SMF ¶ 25; Def.'s Ex. 1, ECF No. 151.

Upon Susan Winters' death, her beneficiaries, Plaintiffs Huffman and Winters each became entitled to $96,666.66 in benefits under the JPMorgan plan. SMF ¶ 42. Winters received two Alliance Payment Notifications reflecting establishment of the Alliance Account benefits due, which explained that Winters could withdraw the entire amount immediately, that her Alliance Account would earn interest, and that her Alliance Account was a "contractual obligation of The Prudential Insurance Company of America." SMF ¶ 45. After Winters received an Alliance Account Kit, which included a settlement confirmation, book of blank drafts, and further information about the account, she wrote one draft for the balance of the account.

SMF ¶¶ 46, 48. Huffman also received the Alliance Account Kit, and wrote a total of eleven drafts from his account. SMF ¶¶ 51, 54.

## 2. The Con-Way Plan

Con-way also contracted with Prudential to provide group life insurance benefits for the Con-way plan, and Prudential issued a group life insurance contract to Con-way. SMF ¶ 35; Def.'s Ex. 35, ECF No. 151-19. The Con-way Group Insurance Certificate contains the same Mode of Settlement rules as the JPMorgan Certificates quoted above, which provide that insurance "is normally paid to the Beneficiary in one sum." SMF ¶ 36; Def.'s Ex. 34, ECF No. 151-18. The Con-way Summary Plan Description does not mention an exact mode of settlement. SMF ¶ 37.

After her husband's death, Plaintiff Patricia Grantham received a form that stated that the proceeds of the claim on her husband's policy were available by Alliance Account. SMF ¶ 58. She called Prudential customer support twice and did not object to an Alliance Account on either occasion. SMF ¶ 59. Grantham kept her Alliance Account open for four months and wrote over thirty drafts. SMF ¶ 60.

Plaintiff Linda Pace received an Alliance Payment Notification following her husband's death; the Notification informed her that her benefits under her husband's policy had been settled through an Alliance Account, that she could withdraw the entire amount or write checks as needed, that her account would earn interest, and that the Alliance Account was a "contractual obligation of The Prudential Insurance Company of America." SMF ¶ 64. Pace withdrew over ninety-nine percent of the Alliance Account balance within two weeks of when it was opened. SMF ¶ 66.

## III.  STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## IV.  ANALYSIS

### A.  Count I—Breach of Fiduciary Duty under ERISA Section 404(a)(1)

Plaintiffs claim that Prudential owed them fiduciary duties under ERISA and violated those duties when it chose to pay their benefits through the Alliance Accounts and invest the balances of those accounts for itself. ERISA defines a fiduciary with respect to a plan as any entity that "(i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) [] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Any entity that meets this definition must comply with various fiduciary duties, including a duty of loyalty to plan beneficiaries and the duty to act in accordance with the documents governing the plan:

> (1) …a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;…and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104. The parties dispute whether Prudential was a fiduciary with respect to the plans, and thus whether the statutory duties apply. Therefore, this Court must determine (1) whether Prudential was acting as a plan fiduciary when it established the Alliance Accounts and invested the balances and, if so, (2) whether Prudential breached its fiduciary duties under ERISA.

### 1. Prudential's Status as a Fiduciary under ERISA

As this Court recognized in its Opinion denying class certification on September 30, 2016, a trilogy of cases from the Courts of Appeals for the First, Second, and Third Circuits establishes that the question of whether Prudential was acting as a fiduciary when it decided to make payments through the Alliance Accounts depends upon whether making payment via the account fulfilled Prudential's obligations to the beneficiaries under the plan documents. *See* ECF No. 138 at 6-8; *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2016 WL 5724293, at *4-6 (E.D. Pa. Sept. 30, 2016). If Prudential acted in accordance with the plan documents by establishing the Alliance Accounts, then it fully satisfied its obligations under ERISA when it created the Plaintiffs' accounts and credited them with the benefits due, and was no longer subject to any fiduciary duties under ERISA. *See Faber v. Metropolitan Life Insurance Co.*, 648 F.3d 98, 104-05 (2d Cir. 2011); *Edmonson*, 725 F.3d 406 (3d Cir. 2013). But if Prudential acted contrary to the plan documents, its decision to establish Alliance Accounts did not discharge its obligations under the plans, and ERISA's fiduciary obligations still applied when Prudential chose to pay the claims through the Alliance Accounts and invest the balances. *See Mogel v. UNUM Life Insurance Co. of America*, 547 F.3d 23, 25 (1st Cir. 2008). Prudential admits that the inquiry hinges upon the plan documents and states that "[a]s instructed by *Edmondson*, [sic] Prudential's use of an Alliance Account constitutes a breach only if it is inconsistent with plan language." Def.'s Mot. Summ. Judg. 26.[4] This Court concludes that Prudential's choice to

---

[4] This admission reveals that Prudential employs a red herring when it emphasizes that plan sponsors have the authority to determine the mode of settlement. Def.'s Mot. Summ. Judg. 20, ECF No. 151 (citing *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59, 64 (1st Cir. 2014)). Plan sponsors do "considerable latitude" to set the terms of the plan. *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59, 64 (1st Cir. 2014). But here, Prudential and JPMorgan/Con-way already set the terms of the plans when they negotiated the

establish accounts for beneficiaries (Alliance Accounts) was inconsistent with the plan language, which instead required payment (in "one sum").  ERISA's fiduciary duties still applied to Prudential after it established the accounts.  Although the beneficiaries admittedly had access to the funds with the establishment of the Alliance Accounts, Prudential essentially was retaining possession of the funds until such time as the beneficiaries drew the funds out in whole or in part. This is in contrast to the issuance of payment in "one sum" by which Prudential would not retain possession of any funds.

Courts interpret ERISA plan documents according to general principles of contract law. *Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 381 (3d Cir. 2003), *as amended* (Aug. 1, 2003). Plaintiffs contend that the plan documents do not permit Prudential to make payment through Alliance Accounts: they point to documents called the Booklets, part of the Group Insurance Certificates, which state that "Employee Life Insurance is normally paid to the Beneficiary in one sum. But a Mode of Settlement may be arranged with Prudential for all or part of the insurance…." Pls.' Exs. 1-2, Def.'s Ex. 34.[5] The documents define "Mode of Settlement" as "payment other than in one sum." *Id.*  Plaintiffs argue that establishing an Alliance Account is not payment "in one sum."

---

plan documents: discretion in setting the terms of the plan does not translate to discretion in interpreting the plan contrary to those terms.

[5] Prudential does not contend that any of the Plaintiffs' family members who enrolled in the plans "arranged" a Mode of Settlement with Prudential by written request under the terms of the Booklets. The Booklets also allow a beneficiary to "mutually agree" on a Mode of Settlement with Prudential. Pls.' Exs. 1-2, Def.'s Ex. 34. Prudential argues that Plaintiff Grantham and Prudential mutually agreed upon the use of an Alliance Account, but does not argue that any of the other beneficiaries agreed to Modes of Settlement. Furthermore, this Court rejects Prudential's argument as to Plaintiff Grantham below. Absent an agreement by covered employees or their beneficiaries to receive payment by a Mode of Settlement, the default requirement of payment in "one sum" controls.

The plain language of the plan document and the bulk of the case law interpreting "one sum" and similar terms support Plaintiffs' position. The Certificates define a "Mode of Settlement," as any payment "other than in one sum." The parties do not dispute that establishing the Alliance Accounts was a Mode of Settlement. *See* SMF ¶ 13. Therefore, by the simplest of syllogisms, establishing the Alliance Accounts was payment "other than in one sum." Previous courts interpreting "one sum" and similar language have reached the same conclusion. In *Mogel*, the First Circuit evaluated whether an insurer's use of a retained asset account satisfied its obligation under the plan to pay in "one lump sum."[6] 547 F.3d at 25. The court concluded that delivering a checkbook did not satisfy the insurer's obligations because the insurer retained the funds for its own use until the beneficiary drew checks on the account. *Id. See also Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) ("*Mogel* certainly stands for the proposition that a retained asset account is not equivalent to a lump-sum payment."); *Lucey v. Prudential Ins. Co. of Am.*, 783 F. Supp. 2d 207, 212 (D. Mass. 2011) ("A lump-sum payment by check (which actually transfers the funds to the beneficiary) is simply not the same as a lump-sum payment by checkbook (which allows the insurance company to retain the funds and earn interest on them)." (citing *Mogel*)).

Another district court analyzed an analogous provision in *Owens v. Metropolitan Life Insurance Company* and concluded that "one sum" was unambiguous and did not include retained asset accounts. 201 F. Supp. 3d 1344 (2016). In *Owens*, the plan documents provided that the insurer "will pay the Life Insurance in one sum. Other modes of payment will be available upon request." *Id.* at 1352. The court cited another case which found that the plain

---

[6]  Although the plan document in *Mogel* required payment in "one lump sum," and the plan documents here established "one sum" as the norm, the Court does not consider the slight difference in language significant.

meaning of "payment in one sum" required "delivery of possession or control of a quantity of money to the beneficiary, and that because a retained asset account involves the insurer keeping possession and control over the proceeds, such accounts are not "payment in one sum," even though the beneficiary may access the funds. *Id.* (quoting *Garrison v. Jackson Nat. Life Ins. Co.*, 908 F. Supp. 2d 1293, 1298 (N.D. Ga. 2012)). The *Owens* court found that the "one sum" provision was unambiguous and required "delivery of possession or control of a quantity of money to the beneficiary:"

> A lay person would read this language as requiring a single check be sent to the beneficiary, not as permitting a [retained asset account.] While the [retained asset account] might provide effective possession of the benefits due, it does not give the beneficiary actual possession. Defendant maintained actual possession of the benefits in its general account. It had control over where the benefits in its general account would be invested. Plaintiff did not have possession or control of the benefits.

*Id.* at 1353. Accordingly, establishing a retained asset account did not comply with the terms of the plan documents. *Id.* This Court finds the reasoning of *Owens* persuasive and concludes similarly: the provision that payment will ordinarily be made in "one sum" is unambiguous and does not include establishing an Alliance Account.[7]

Prudential contends that establishing the Alliance Accounts did satisfy its obligations under the plan documents, which permitted settlement by Alliance Account. It points to the SPD

---

[7] Prudential leans heavily on the word "normally" in the plan documents, and argues that the statement that payment will "normally" be paid in one sum "specifically contemplates" other modes of settlement. Def.'s Mot. Summ. Judg. 29. This reading does not help Prudential. Adopting Prudential's understanding, the terms of the plan establish "one sum" as the default method of payment without foreclosing others. But Prudential replaced payment in one sum with a new default, the Alliance Account. This clearly violated the terms of the plan.

Prudential argues further that JPMorgan and Con-way had the discretion to interpret ambiguous provisions of the plan and thus had the authority to permit settlement by Alliance Account. Def.'s Mot. Summ. Judg. 29. But this argument is irrelevant because the plan documents unambiguously foreclose payment by Alliance Account as the default mode of settlement.

for the JPMorgan Plan, which informs enrolled employees that "[g]enerally, benefits will be paid to your beneficiary through Prudential's Alliance Account." Def.'s Ex. 23. Prudential argues that the SPD documents became part of the JPMorgan plan, and that the SPD provision does not conflict with the requirement of payment in "one sum." Def.'s Opp. Summ. Judg. 15-16, ECF No. 153. Plaintiffs argue that the SPD does not bind Prudential because it is not encompassed by the integration clause in the insurance contract between Prudential and JPMorgan, and in fact directly conflicts with the "one sum" requirement in Prudential's certificate. Pls.' Opp. Summ. Judg. 12, ECF No. 154.

Prudential's point is well taken that the JPMorgan SPD should be interpreted as part of the JPMorgan Plan. For as this Court recognized when denying reconsideration of the denial of class certification, "the task at hand is not to interpret the Group Contract; it is to interpret the JPMorgan ERISA plan." ECF No.146 at 2 n.3. To the extent that Plaintiffs rest their argument on the integration clause in the JPMorgan group contract, they overlook the forest and focus on a few trees. A court interpreting an ERISA plan needs a view of the whole forest: in many cases a series of documents together comprise the plan, because "ERISA certainly permits more than one document to make up a benefit plan's required written instrument." *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 55 (1st Cir. 2014).

Multiple seemingly independent documents comprise the JPMorgan plan at issue here. The document entitled "Health & Income Protection Program for JPMorgan Chase Bank and Certain Affiliated Companies," the "wrap-plan" for all of JPMorgan's employee benefit plans, acts as a sort of master plan for the benefit programs. *See Shaw v. Prudential Ins. Co. of Am.*, 556 F. App'x 536, 539 (8th Cir. 2014) (discussing the same JPMorgan "Health & Income Protection Program" document). The wrap-plan lists the following items as stating the terms of "the

Program:"[8] (1) the wrap-plan document itself; (2) the "Plan documents and/or summary plan descriptions ("SPDs")"[9] for specifically enumerated plans; and (3) the terms of any insurance contracts or policies purchased to provide benefits under any Plan. ECF No. 151 at 98 (wrap-plan Section 1.1).

This list includes all the documents the parties rely upon. The wrap-plan expressly incorporates the SPDs for the listed plans, and the JPMorgan SPD contains the provision that payment is "generally" made through an Alliance Account. The provision that Plaintiffs emphasize, which states that payment will "normally" be made in "one sum," occurs in a document called the Booklet; according to its terms, the Booklet is part of the Group Insurance Certificate. Pls.' Exs. 1-2. The Group Insurance Certificate in turn forms part of the Group Contract, *see id.*, which is incorporated into the plan through the wrap plan as "the terms of any insurance contracts." Thus, the JPMorgan plan contains both provisions: that payment will be made in one sum, and that it will be made through an Alliance Account. As discussed above, "one sum" cannot be read to mean payment through an Alliance Account, so these provisions directly conflict. The question becomes which governs.

The SPD itself governs because it states that it "does not include all of the details contained in the applicable insurance contracts, plan documents, and trust agreements. If there is a discrepancy between the official plan documents and this summary, the official plan documents will govern." Def.'s Ex. 23. The SPD conflicts with the "applicable insurance contract" as to the default means of payment, and therefore, by the terms of the SPD, the insurance contract

---

[8]     In defining the "Program," the wrap-plan states that "references herein to the Program shall include each individual Plan designated as part of the Program in Exhibit A hereto." ECF No. 151 at 102 (wrap plan Section 2.27).
[9]     The wrap-plan defines "Plan" as "any one of the employee benefit plans listed on Exhibit A [of the wrap-plan] (and set forth in an SPD) which is maintained for the benefit of Eligible Employees and their Dependents. ECF No. 151 at 102 (wrap plan Section 2.23).

governs. Prudential cannot rely on the JPMorgan SPD to justify using the Alliance Accounts under the terms of the plan documents.

Thwarted by the plain language of the JPMorgan plan, Prudential turns to the course of dealing between the parties to show that JPMorgan and Con-way contemplated payment by Alliance Account, regardless of the terms of the plan documents. Prudential argues that JPMorgan "expressly directed Prudential to implement Alliance Accounts as the default method" for settling claims, and cites to a 2005 email to Prudential's representative. Def.'s Opp. Summ. Judg. 8. With respect to Con-way, Prudential argues that "Con-way and Prudential agreed to the Con-Way Contract with the explicit expectation that Prudential would settle benefits through establishment of an Alliance Account as the *default* method of settlement." *Id.* at 9. Prudential cites communications during the solicitation and negotiation of the contract between Con-way and Prudential in an attempt to demonstrate that the use of Alliance Accounts was "in accordance with the expectation upon which the Con-way contract was entered." *Id.* at 10. But the Third Circuit does not endorse accepting parol evidence, such as extrinsic evidence of prior agreements or statements between parties, to vary the terms of an ERISA plan. *See In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996) (holding that ERISA's requirement of a written instrument operates as a "strong integration clause" that makes the plan document the entire agreement of the parties and bars parol evidence). As discussed above, payment in "one sum" is unambiguous. Prudential may not rely on evidence extrinsic to the contracts to vary the meaning of that term. *See Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1234 (3d Cir. 1991) (observing that the parol evidence rule bars extrinsic evidence to interpret a document unless evidence offered to clarify an ambiguity); *Murren v. Am. Nat. Can Co.*, No. 99-CV-3136, 2000 WL 960262, at *5 (E.D. Pa. July 11, 2000), (rejecting evidence of oral

statements as ground for ERISA claim where written terms of plan controlled), *aff'd*, 262 F.3d 404 (3d Cir. 2001).

To summarize, the plan documents require that Prudential pay in one sum. Prudential did not do that, so it had not yet satisfied its obligations under the plans, and acted as a fiduciary under ERISA when it established the Alliance Accounts and invested the balances. *See Mogel*, 547 F.3d at 25.

## 2. Prudential's Breach of Fiduciary Duty

The question then becomes whether Prudential's decision to create Alliance Accounts and invest the proceeds breached their fiduciary duties, a question of law. *See Milwaukee Area Joint Apprenticeship Training Comm. for Elec. Indus. v. Howell*, 67 F.3d 1333, 1338 (7th Cir. 1995) (noting that breach of fiduciary duties under ERISA was a question of law); *In re Main, Inc.*, No. 98-158, 1999 WL 330239, at *3 (E.D. Pa. May 24, 1999) (stating that breach of fiduciary duty is question of law).

The Court finds that Prudential breached its fiduciary duties to Plaintiffs. ERISA requires plan fiduciaries to act for the "exclusive purpose" and "solely in the interest of [a plan's] participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A). The Third Circuit Court of Appeals has held that "[T]rustees violate their duty of loyalty when they act in the interests of [any other actor] rather than 'with an eye single to the interests of the participants and beneficiaries of the plan.'" *Reich v. Compton,* 57 F.3d 270, 291 (3d Cir. 1995), *amended* (Sept. 8, 1995) (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1238 (9th Cir. 1983)). Here, Prudential chose to ignore its

obligations under the plan documents and create the Alliance Accounts to generate a profit for itself.[10] In doing so, Prudential had its own interests in mind, not those of its beneficiaries.

The parties dispute whether, even assuming that Prudential did breach its fiduciary duties, Plaintiffs may recover. Prudential, citing *Edmonson*, argues that any profit it made from the funds in Plaintiffs' Alliance Accounts is "wholly dependent," upon the Plaintiffs' actions: they had the option to withdraw the entire balance of their accounts, but did not do so. Def. Mot. Summ. Judg. 32-33. Plaintiffs argue that *Edmonson* misunderstood the nature of a retained asset account: the account is established and the assets are invested simultaneously, such that there is no "later act of investing the assets for [the insurer's] own profit." Pls.' Opp. Summ. Judg. 24. *Edmonson* did find that, even if the defendant breached its fiduciary duty by establishing a retained asset account, the plaintiff could not recover "because the breach did not directly cause the injury for which she seeks relief, [the insurer's] investment for its own profit, and "ERISA requires a plaintiff to show that the injury was a proximate cause of the breach of duty." 725 F.3d at 424. It is important to note that the *Edmonson* court analyzed the issue according to a somewhat artificial distinction between the insurer's choice to establish the retained asset accounts and the investment of the retained funds. *Id.* at 421-24. The plaintiff there drew that

---

[10]    This Court wishes to emphasize that it is not holding that the use of a retained asset account or another means of payment that generates a profit for the insurer *per se* violates fiduciary duties under ERISA. As the Third Circuit Court of Appeals has recognized, "the retained-asset account method of payment is not in itself necessarily inconsistent with ERISA." *Edmonson*, 725 F.3d at 423–24 (citing *Vander Luitgaren v. Sun Life Assurance Co. of Canada*, No. 09–11410, 2012 WL 5875526, at *11 (D. Mass. Nov. 19, 2012)). As a matter of fact, it "is inconsistent with ERISA's goals to prohibit this type of arrangement." *Id.* (citing *Merrimon v. Unum Life Ins. Co. of Am.*, 845 F. Supp. 2d 310, 320 (D. Me. 2012)). Rather, Prudential violated its duties here because it selected a method of payment that profited itself *in contravention of the plan documents*. This fact distinguishes this case from *Edmonson*, where the plan documents were silent on payment methods: the Third Circuit Court of Appeals held that the insurer had the discretion to determine the payment method, and that payment via a retained asset account satisfied its fiduciary obligations. *Id.* at 423-24.

distinction because she argued that the two actions were each a separate breach of fiduciary duty. *Edmonson* can be fairly read as holding that any damages the plaintiff sustained resulted from the second breach of fiduciary duty—the investment of the retained funds—and thus did not result from the first breach of fiduciary duty—the insurer's decision to create a retained asset account.

This distinction made sense in *Edmonson*, because the court found that the insurer had the discretion to pay through a retained asset account and that establishing that account discharged the insurer's fiduciary duties, such that any subsequent investment did not involve "plan assets," and thus, ERISA's fiduciary duties. *Id.* at 426-27. This Court does not draw the same distinction because, as discussed above, Prudential did not satisfy its obligations under the plan documents. Thus its actions continue to implicate fiduciary duties under ERISA, regardless of whether establishing the accounts and investing the proceeds are considered a single action or two successive actions.

ERISA does require a plaintiff to show that a breach of fiduciary duty proximately caused the injury when the plaintiff seeks to recover for a loss. *Edmonson*, 725 F.3d at 424 (citing *Willett v. Blue Cross and Blue Shield of Alabama*, 953 F.2d 1335, 1343 (11th Cir. 1992)). But a plaintiff does not need to show a loss to recover for a breach of fiduciary duty under ERISA—the plaintiff may also show that the fiduciary profited through the use of plan assets. *See* 29 U.S.C. § 1109 (providing that a fiduciary who breaches a duty "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, *and* to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary" (emphasis added)).

Here, Plaintiffs do not seek to recover an out-of-pocket loss, as they have suffered none, but instead to disgorge the profits Prudential made from impermissibly investing the plan assets.

ERISA authorizes a court to order equitable relief "as the court may deem appropriate," which includes disgorgement of profits obtained by breach of fiduciary duty. *See* 29 U.S.C. § 1109; *Cigna Corp. v. Amara*, 536 U.S. 421, 441 (2011) ("Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.") Disgorgement of profits, a traditional equitable remedy, does not require a showing of harm to the plaintiff, as the Third Circuit Court of Appeals stated in *National Security Systems, Inc. v. Iola*: "[W]here a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary. This rule applies even when the fiduciary's disloyal enrichment causes the beneficiary no harm." 700 F.3d 65, 101 (3d Cir. 2012) (discussing "appropriate equitable relief" under ERISA) (citing Restatement of Restitution § 197 at 808 (1937)) (internal citations and quotations omitted). *See also Leigh v. Engle*, 727 F.2d 113, 121–22 (7th Cir. 1984) ("ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss."). Therefore, Plaintiffs may recover even though they did not withdraw the funds from their accounts.

Prudential argues that Plaintiff Grantham's claims fail because she explicitly agreed with Prudential to the settlement of her claim through an Alliance Account. Def.'s Mot. Summ. Judg. 33. Prudential cites a claim form Grantham used to obtain benefits under the Con-way plan, which provided that Prudential would pay benefits through an Alliance Account "unless you elect an alternative payment or settlement option. *Id.* at 34. Prudential also points to two phone calls Grantham made to Prudential customer support, during which she was informed that her claims would be settled by Alliance Account. Prudential states that Grantham "was directly informed that an Alliance Account would be used to disburse her claim funds, agreed to the use

of an Alliance Account, and did not question or object to the use of this method….” Def.'s Mot. Summ. Judg. 34. Prudential argues that these facts satisfy this Court's finding when denying class certification that “[i]f…a beneficiary called Prudential to inquire about how their benefits would be paid, and, after hearing the various payment options, the beneficiary agreed to be paid through an Alliance Account, that person would not have a claim that Prudential breached the plan terms….” *Id.* (citing ECF No. 139 at 10).

The Court disagrees. The evidence Prudential cites does not show that Grantham requested or selected an Alliance Account as a mode of settlement. It shows only that Prudential represented to Grantham that the Alliance Account was the default method of payment—in violation of the clear language of the plan documents—and that Grantham did not object. This evidence does not establish “the Beneficiary and Prudential…mutually agree[d]” on a method of payment, as provided for in the plan booklet, *see* Def.'s Ex. 34, so Prudential cannot establish that they acted in accordance with the plan terms in paying Grantham.

Nor does the evidence establish Grantham's acquiescence or consent, affirmative defenses to Prudential's breach of fiduciary duty. Courts use the common law of trusts as a guide to interpreting fiduciary duties under ERISA, and stating an affirmative defense of acquiescence or consent to a breach of trust under common law requires full disclosure of material facts. *See Ream v. Frey*, 107 F.3d 147, 153-54 (3d Cir. 1997); *In re Cumberland Farms, Inc.,* 284 F.3d 216, 231 (1st Cir. 2002) (“For a cestui que trust to 'ratify' or confirm a breach of trust, he must be apprised of all the material facts and as well of their legal effect. No half-hearted disclosure or partial discovery is sufficient in either respect.”); Restatement (Second) of Trusts § 216 (1959) (“The mere fact ...that the beneficiary does not object to a deviation from the terms of the trust is not consent to such deviation.”). Prudential did not disclose to Grantham that the plan documents

required settlement by one sum and obtain her consent to deviate from that requirement and

establish an Alliance Account. Prudential therefore cannot establish a defense of Grantham's

acquiescence or consent to Prudential's breach of fiduciary duty.

Accordingly, Prudential violated its fiduciary duties under ERISA, and Plaintiffs are

entitled to summary judgment with respect to liability on Count I.

## B. Count II—Prohibited Transaction under ERISA Section 406(a)(1)(C)

Plaintiffs allege that Prudential violated ERISA Section 406(a)(1)(C), which states that a

"fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows

or should know that such transaction constitutes a direct or indirect furnishing of goods, services,

or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C). This section

"supplements the fiduciary's general duty of loyalty to the plan's beneficiaries ... by categorically

barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Tr. & Sav. Bank v.*

*Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000) (quoting *Comm'r Internal Revenue v.*

*Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)). The definition under ERISA of "party

in interest" with respect to an employee benefit plan includes both "any fiduciary" and "a person

providing services to such plan." 29 U.S.C. § 1002(14). As determined above, Prudential is a

fiduciary with respect to the JPMorgan and Con-way plans, so it is therefore also a party in

interest.

A plaintiff can state a claim under Section 1106(a)(1)(C) when an entity providing

management and administrative services to a plan receives undisclosed amounts of shared

revenue in exchange for services rendered to the plan. *See Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 601 (8th Cir. 2009) (finding that allegations that employer and manager of employee

retirement plan caused plan to enter into arrangement under which trustee received undisclosed

amounts of revenue sharing payments in exchange for services rendered to plan stated Section 406(a)(1)(C) claim); *Skin Pathology Assocs., Inc. v. Morgan Stanley & Co. Inc.*, 27 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("Fee-sharing arrangements or kickbacks do not in-and-of themselves create a violation, but their non-disclosure does."). In a recent opinion, the United States District Court for the Southern District of New York recognized that "it is circular to suggest that an entity which becomes a party in interest by providing services to the Plans has engaged in a prohibited transaction simply because the Plans have paid for those services," but recognized that when such revenue sharing arrangements are undisclosed, they "raise the reasonable inference that the plan's fiduciaries caused the plan to engage in the type of transactions ERISA § 406(a) was intended to avoid." *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at*13–14 (S.D.N.Y. Aug. 25, 2017), *reconsideration denied*, No. 16-CV-6284 (KBF), 2017 WL 4736740 (S.D.N.Y. Oct. 19, 2017) (distinguishing *Braden* and holding that the plaintiff could not state a Section 406(a)(1)(C) claim where conclusory allegations did not suggest undisclosed revenue sharing agreement).

ERISA includes an exception to liability under Section 406(a)(1)(C) which permits "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2). Like the defendant in *Owens*, Prudential has taken the position that it owed no fiduciary duties, and issues of fact remain as to whether the reasonable compensation exception applies. *See Owens*, 210 F. Supp. 3d at 1356-57. Issues of fact also exist as to whether Prudential disclosed to plan beneficiaries or sponsors the arrangement whereby it would profit from investing the Alliance Account funds and

the degree to which Prudential did profit. Therefore, Plaintiffs' and Prudential's motions for summary judgment as to the Section 406(a)(1)(C) claim are denied.

### C.  Count III—Common Law Breach of Fiduciary Duty

Because, as discussed above, Plaintiffs can prevail on their breach of fiduciary duty claim under ERISA, their common law breach of fiduciary duty claims pleaded in the alternative cannot survive summary judgment. *See Schirmer v. Principal Life Ins. Co.*, No. 08-CV-2406, 2008 WL 4787568 at *3 (E.D. Pa. Oct. 29, 2008) (observing that, because ERISA preempts state law breach of fiduciary duty claims, they may not both survive summary judgment). Accordingly, this Court grants Prudential's motion for summary judgment as to Count III.

### V.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is granted in part with respect to Count I, and denied with respect to Count II. Defendant's Motion for Summary Judgment is denied with respect to Count I and Count II, and granted with respect to Count III. A separate Order will issue.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge