UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARK R. HUFFMAN;<br>PATRICIA L. GRANTHAM;<br>LINDA M. PACE; and<br>BRANDI K. WINTERS, *individually and on behalf of a class of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | : | No. 2:10-cv-05135 |

**<u>O P I N I O N</u>**
**Plaintiffs' Motion to Amend/Correct the Orders Denying Class Certification**
**ECF No. 164—Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**
**United States District Judge**

**January 29, 2018**

## I. INTRODUCTION

Plaintiffs are the beneficiaries of life insurance plans obtained by deceased family members who worked for two separate companies, JPMorgan Bank and Con-Way Incorporated. Defendant Prudential Insurance Company of America provided life insurance coverage through the plans for employees of both companies under contracts that required that benefits be paid "in one sum." Prudential adopted a default practice of paying benefits under the relevant policies through retained asset accounts called "Alliance Accounts;" this practice allows Prudential to retain the funds and earn interest on the retained funds until the beneficiary withdraws the funds. Plaintiffs sued Prudential, contending that the choice to use Alliance Accounts violated

Prudential's fiduciary duties under ERISA and violated ERISA's prohibited transaction provisions.

Plaintiffs previously sought to certify a class action of all beneficiaries of Prudential-insured life insurance plans that Prudential paid by establishment of Alliance Accounts. This Court denied the request, finding that Plaintiffs did not show that common questions of law or fact would predominate over individual disputes: the Court observed that individualized disputes about the proper construction of plan documents and individual beneficiaries' interactions with Prudential would likely overwhelm any common issues. ECF Nos. 138-39. Plaintiffs moved for reconsideration, which this Court denied. Recon. Op., ECF No. 146.

On December 6, 2017, this Court granted partial summary judgment as to liability in favor of Plaintiffs, finding that because the terms of the plans required payment in "one sum," and payment by establishment of Alliance Accounts was not payment in "one sum," Prudential failed to comply with the payment terms of the JPMorgan and Con-Way plans and thus breached its fiduciary duties under ERISA. Summ. J. Op., ECF Nos. 161-62. The Court denied summary judgment on the question of whether Prudential's arrangement violated ERISA's prohibited transaction provisions, finding that issues of fact remained. *Id.*

Plaintiffs now present a third request to certify a class. The named Plaintiffs are beneficiaries under the plans sponsored by JPMorgan Bank and Con-Way Incorporated. They once again seek to certify a class of all beneficiaries of Prudential plans paid by Alliance Accounts. This time, though, they attempt to restrict the class to beneficiaries of plans containing certain operative provisions that allegedly brings the plans within the scope of this Court's decision on summary judgment. The proposed Class includes "[a]ll beneficiaries of ERISA-governed employee benefit plans that were insured by group life insurance contracts issued by

Prudential for whom Prudential established an 'Alliance Account' between September 30, 2004, and October 31, 2011," under contracts that contained: (1) a provision providing that "Life Insurance is normally paid to the beneficiary in one sum;" (2) an integration clause that did not include other portions of the ERISA plan or a Summary Plan Description (SPD) as a part of the contract with Prudential; and (3) a provision that the contract with Prudential could only be amended with the consent of an officer of Prudential. Mot. 1-2, ECF No. 164. Excluded from the Class are (1) "beneficiaries of plans whose summary plan descriptions or other plan documents are proven by Prudential to state that claims may be settled using a retained asset account or 'Alliance Account,' and do not state that in the event of a conflict between the document and the insurance contract, the contract controls;" (2) beneficiaries of contracts that were situated in Arkansas, Colorado, or Nevada; and (3) beneficiaries who resided in Maryland. *Id.*

Additionally, Plaintiffs seek certification of a Subclass limited to beneficiaries of the JPMorgan and Con-Way plans. The Subclass is limited to those beneficiaries under group life insurance policies that provided "Life Insurance is normally paid to the beneficiary in one sum" for whom Prudential established an Alliance Account between September 30, 2004, and October 31, 2011. Mot. 1-2. Excluded from the Subclass are beneficiaries of contracts that were sitused in Arkansas, Colorado, or Nevada, and beneficiaries who resided in Maryland. *Id.*

Because Plaintiffs' proposed Class still fails to satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3), this Court will not certify the Class. However, because Plaintiffs' proposed Subclass, limited to beneficiaries of the JPMorgan and Con-Way plans this Court construed at summary judgment, satisfies the requirements of Rule 23, this Court will grant Plaintiffs' motion in part and certify the Subclass.

## II. STANDARD FOR CLASS CERTIFICATION

A court may only grant certification of a class action "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)), *as amended* (Jan. 16, 2009); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). For certification under Rule 23, the class must satisfy the prerequisites of Rule 23(a) and one of Rule 23(b)'s three subparts. *In re Hydrogen Peroxide*, 552 F.3d at 309–10. The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

## III. ANALYSIS

### A. Rule 23(b) Requirements

Because this Court previously denied class certification primarily because it found a lack of predominance of common issues as required by Federal Rule of Civil Procedure 23(b), it addresses the Rule 23(b) factors first. Rule 23(b)(3), under which Plaintiffs seek certification, requires the court to find that (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Additionally, Rule 23(b)(3) contains the implied requirement of ascertainability, which requires the plaintiff to prove by a preponderance of the evidence that (1) the class is "defined with reference to objective criteria;" and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within

the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015); *Underwood v. Kohl's Dep't Stores, Inc.*, No. CV 15-730, 2017 WL 5261535, at *4 (E.D. Pa. Nov. 13, 2017).

The Court concludes that the proposed Class still fails to satisfy the predominance requirement, but that common issues predominate with respect to the Subclass. The Subclass also meets the ascertainability and superiority requirements, so the Subclass satisfies the requirements of Rule 23(b)(3).

**1. The Subclass is ascertainable.**[1]

Initially, a plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013). Ascertainability is an implied requirement of Rule 23(b)(3), and a plaintiff must show that: (1) the class is "defined with reference to objective criteria;" and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 355 (citing *Marcus*, 687 F.3d at 593–94). To satisfy the ascertainability requirement, a plaintiff need only show that "class members *can* be identified." *Byrd*, 784 F.3d at 163 (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)).

The Subclass in this case is readily ascertainable. It is defined according to objective criteria: all beneficiaries of the JPMorgan and Con-Way plans, excluding those beneficiaries of contracts that were sitused in Arkansas, Colorado, or Nevada, and beneficiaries who resided in

[1] This Court does not address the issue of whether the Class is ascertainable because it concludes below that the Class cannot meet the predominance requirement.

Maryland. The Subclass members can be readily identified from a review of Prudential's business records.

**2. The proposed Class fails because it does not satisfy the predominance requirement.**

Plaintiffs' proposed Class, which would require this Court to individually analyze 2,200 different ERISA plans, fails for lack of predominance. The predominance requirement asks whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, at 196-97 (5th ed. 2012)). The inquiry focuses "on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Hayes*, 725 F.3d at 359 (3d Cir. 2013) (citing *In re Hydrogen Peroxide*, 552 F.3d at 311).

In denying reconsideration of the original denial of class certification, this Court observed that the interpretation of these 2,200 Prudential plans presented too many individualized inquiries to permit class certification:

> Resolving, definitively, how to reconcile the various documents and clauses that make up this one JPMorgan plan would only settle the matter for that one benefit plan; based on the parties' estimate, there would be another 2,199 plans after that, each with its own booklets, summaries, incorporation clauses, and directions for how to resolve conflicting terms that would need to be examined and construed. In other words, this exercise showed that this is not a case where the putative class members were all subject to the same form agreement, because even if all of the 2,200 plans in the proposed class contain insurance policies that have the "in one

> sum" payment language, a particular plan may also contain other documents that also speak to how benefits were to be paid.

Recon. Op. 3. This Court, after extensive analysis on summary judgment, has resolved definitively only two of those 2,200 plans.

Plaintiffs try to downplay this fact by highlighting that they limit their Class and Subclass to beneficiaries of plans "insured by contracts that contain uniform payment language and exclude beneficiaries of Plans that have other plan documents that contain different payment language unless those documents recognize the supremacy of the contracts in the event of a conflict." Mot. 15. Therefore, Plaintiffs argue, "all class members' claims will turn on whether Prudential complied with or violated the contracts' payment language," specifically, "whether Prudential paid class members' benefits to them 'in one sum' when it retained their benefits using Alliance Accounts." *Id.* Prudential dismisses the relevance of SPDs and documents other than the insurance contracts, citing *Owens v. Metro. Life Ins. Co.*, No. 2:14-CV-00074-RWS, 2017 WL 6302384 (N.D. Ga. Sept. 29, 2017), in support. In *Owens*, the court rejected the argument that variations in language in SPDs that allowed for payment by a retained asset account required a plan-by-plan analysis that would defeat predominance. *Id.* at *9. The court applied the rule that summary documents "provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan," such that when the terms of the SPD conflict with governing plan documents, the terms of the SPD are not enforceable. *Id.* (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)) (internal quotations omitted). Therefore, the court concluded that the class members' claims would not require individual construction of the SPDs because the SPDs were irrelevant. *Id.*

Plaintiffs' argument overlooks the main focus of the Court's analysis of the JPMorgan and Con-Way plans on summary judgment, which compels a conclusion opposite to that reached

by the *Owens* court. As this Court's opinion made clear, Plaintiffs' claims require an interpretation of *plans*, not just the insurance contracts, which form only a part of the plans. As this Court recognized, a series of documents, including the SPDs, together formed the terms of the JPMorgan and Con-Way plans:

> Prudential's point is well taken that the JPMorgan SPD should be interpreted as part of the JPMorgan Plan. For as this Court recognized when denying reconsideration of the denial of class certification, "the task at hand is not to interpret the Group Contract; it is to interpret the JPMorgan ERISA plan." ECF No.146 at 2 n.3. To the extent that Plaintiffs rest their argument on the integration clause in the JPMorgan group contract, they overlook the forest and focus on a few trees. A court interpreting an ERISA plan needs a view of the whole forest: in many cases a series of documents together comprise the plan, because "ERISA certainly permits more than one document to make up a benefit plan's required written instrument." *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 55 (1st Cir. 2014).

Summ. J. Op. 13. Determining Prudential's fiduciary duties required analysis of the tangled web of documents comprising the JPMorgan and Con-Way plans as a whole: the JPMorgan plan, for example, consists of the wrap-plan document, the SPDs, and the terms of the insurance contracts that provide benefits under the plan. This Court concluded that the JPMorgan wrap-plan expressly incorporated the SPDs that provided that Prudential would "generally" pay via Alliance Account, which conflicted with the insurance contract's provision for payment in "one sum." *Id*. Ultimately, the "one sum" term controlled, not because it occurred in the insurance contract instead of the SPD, but because the SPD explicitly stated that if it conflicted with an "applicable insurance contract," the insurance contract would control. *Id.* Although the *Owens* court found that a court cannot enforce SPD terms that conflict with the governing plan documents, here, the JPMorgan SPD *is* a governing plan document.

Thus, determining the terms of a plan is not as simple as Plaintiffs suggest. Plaintiffs contend that they have made modifications to their class definition that eliminate any concerns

about predominance. Two of these modifications in particular illustrate the inadequacy of the proposed class definition. First, Plaintiffs suggest limiting the Class to beneficiaries under contracts that contain integration clauses and that provide that modifications must be signed by an officer of Prudential. Plaintiffs yet again take an overly narrow view of their own claims: as discussed above, the fiduciary duty analysis does not begin and end with the terms of the insurance contract. This Court cannot ignore wrap plans, SPDs, and other documents that may collectively comprise a plan, and as a result, would have to analyze each of the 2,200 plans individually to determine the scope of Prudential's obligations, and therefore whether it breached any fiduciary duty.

Second, Plaintiffs suggest excluding beneficiaries of plans whose SPDs or other plan documents "are proven by Prudential to state that claims may be settled using a retained asset account or 'Alliance Account' unless the documents recognize that in the event of a conflict between the document and the insurance contract, the contract controls." Mot. 7. But as Prudential points out, defining the Class in this way requires, not just a "ministerial" review of the plan documents, but legal interpretation of each of the plans involved, the sort of analysis this Court engaged in on summary judgment.[2] *See Clavell v. Midland Funding LLC*, No. CIV.A. 10-

---

[2] Plaintiffs argue in their Reply that "Prudential's arguments are based, in part, upon an erroneous premise that it is the Court and not counsel who will need to examine documents and resolve issues that may arise in the course of identification of the members of the proposed Class and Subclass." Reply 7, ECF No. 173. While counsel for Plaintiffs display commendable industriousness, they overstate the degree to which counsel will be able to resolve the issues necessary to define the Class. The first exclusion from the Class highlights this point: Plaintiffs seek to exclude "beneficiaries of plans whose summary plan descriptions or other plan documents are proven by Prudential to state that claims may be settled using a retained asset account or 'Alliance Account,' and do not state that in the event of a conflict between the document and the insurance contract, the contract controls." This exception requires Prudential to "prove" that plan documents permit the use of an Alliance Account and do not state that in the event of a conflict between documents, the insurance contract controls—issues of proof and

3593, 2011 WL 2462046, at *2 (E.D. Pa. June 21, 2011) (holding that a class definition is deficient if it requires an "arduous individual inquiry" into each potential class member's claim to define the class instead of a "ministerial review"). To determine which of the plans satisfies the proposed class definition will require careful construction and legal interpretation of each of the plans—but "[i]f the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." *Id.* at *4.

Resolving the claims of the Class would require individual construction of the specific universe of documents for each of the 2,200 plans.[3] As this Court previously recognized, the need for these individualized inquiries defeats predominance and makes class certification inappropriate. Plaintiffs still have not met the predominance requirement with respect to the proposed Class, and this Court declines to certify the Class.

**3. <u>The Subclass satisfies the predominance requirement.</u>**

The elements of Plaintiffs' claims reveal that they are susceptible to common proof by the Subclass. Unlike the claims of the proposed class, which require individual construction of 2,200 plans, the claims of the Subclass require construction of only two of these plans: the JPMorgan and Con-Way plans this Court analyzed on summary judgment. Plaintiffs' claims depend on whether Prudential's decision to pay benefits through Alliance Accounts satisfied the two plans' requirement of payment "in one sum." This determination will involve construction and interpretation of the documents comprising the two plans, and thus the fiduciary duty claims

---

contractual interpretation that the parties will inevitably dispute and that this Court will inevitably have to resolve.

[3] It is worth noting that, even to decide the summary judgment motion, this Court had to analyze the two plans separately. The Con-Way plan did not specify a mode of settlement in its SPDs, but the JPMorgan plan did, which required the separate analysis discussed above.

are susceptible to common proof for all Subclass members. Once resolved, the question of Prudential's obligations under these plans governs the claims of all Subclass members.

Prudential objects, arguing that individual issues exist for the members of the Subclass because specific beneficiaries might have affirmatively selected an Alliance Account as a mode of settlement, "necessitating a review of the pertinent facts for each of the more than 1,000 members of the putative subclass." Opp. 33, ECF No. 169.

The *Owens* court, in its order certifying a class, specifically rejected the argument that the possibility that individual beneficiaries may have selected a retained asset account defeated predominance. 2017 WL 6302384, at *10. The court noted that, although beneficiaries could have selected a retained asset account voluntarily through a form or phone call, the defendants should have had records of either method of selection and, furthermore, the defendant had not provided examples of beneficiaries who made such a choice. *Id.* Even if such beneficiaries did exist, their specific issues did not defeat predominance:

> However, if such beneficiaries exist, the fact that "some affirmative defenses peculiar to some individual class members" may have to be tried separately is insufficient to defeat predominance when "one or more of the central issues in the action are common to the class and can be said to predominate." That is the case here. This defense is insufficient to defeat predominance.

*Id.* at *10 (quoting *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal citation omitted).

This Court reaches a similar conclusion: the common legal issues of construing Prudential's obligations under the JPMorgan and Con-Way plans predominate over any individual issues specific to particular beneficiaries. Prudential complains that Plaintiffs improperly try to shift the burden of proof with their argument that Prudential has not provided adequate evidence that any beneficiary chose an Alliance Account. Prudential notes that it has also raised defenses of consent and acquiescence, waiver, and the statute of limitations, which

would require similar examinations of the behavior of individual beneficiaries. Opp. 30-31. Prudential is correct that the burden rests on Plaintiffs to prove predominance by showing that common issues are susceptible to class-wide resolution; however, Prudential bears the ultimate burden on its defenses. *See In re Hydrogen Peroxide*, 552 F.3d at 316 n.14; *Brady v. Deloitte & Touche LLP*, No. CV 08–00177 SI, 2012 WL 1059694, at *5 (N.D. Cal. Mar. 27, 2012) (holding that for the purposes of class certification the defendant has the burden of proof on the merits of its affirmative defenses and plaintiffs have the burden of proof in regard to satisfying Rule 23) (citing *Marlo v. United Parcel Serv., Inc.,* 639 F.3d 942, 947 (9th Cir. 2011)).

Prudential only has offered evidence of consent with respect to one plaintiff, Patricia Grantham, which this Court rejected on summary judgment. Summ. J. Op. 19-21. It has done nothing more than hint that the other defenses are available, citing its recitation of affirmative defenses in its Answer to the Amended Complaint. *Compare* Opp. 30, *with* Answer to Amend. Comp. 9-12, ECF No. 104. But as the Sixth Circuit Court of Appeals has recognized, "speculation and surmise" should not "tip the decisional scales in a class certification ruling," and the mere fact that a plaintiff-specific defense is possible does not automatically defeat predominance. *See Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (citing *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)). Moreover, as *Owens* recognized, Rule 23(b)(3)'s predominance requirement does not require each and every issue be susceptible of common proof. 2017 WL 6302384, at *8. The mere presence of individualized issues, particularly with respect to defenses applicable to specific plaintiffs, does not by itself defeat predominance as long as a "sufficient constellation of common issues binds class members together." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 161–63 (3d Cir. 2002) (holding that presence of individual determinations with respect to

fraudulent concealment defense to statute of limitations did not destroy predominance when focus of inquiry was defendants' conduct, which was susceptible to common proof).

This Court has recognized previously the possibility that beneficiaries' consent to Alliance Accounts and communications with Prudential could introduce individualized issues into the proceedings. However, in light of the decision in *Owens* on substantially similar facts and the newly-limited Subclass definition, which makes resolving the breach of fiduciary duty issues by class-wide proof possible, this Court cannot conclude that these individual questions predominate over the common issues. *See also Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*, 290 F.R.D. 452 (D. Vt. 2013) (finding that common questions predominated over individual questions in putative class action against ERISA plan administrator alleging breach of fiduciary duty stemming from improper retention of funds where questions of whether defendant qualified as an ERISA fiduciary and whether keeping gains on ERISA accounts was a breach of that fiduciary duty were questions susceptible to classwide resolution). Plaintiffs have not shifted their burden onto Prudential; rather, they have pointed out that, on the present record, it is more likely than not that Prudential's defenses particular to specific plaintiffs will not overwhelm the common issues. Plaintiffs have, in other words, demonstrated a "sufficient constellation of common issues," namely Prudential's obligations under the JPMorgan and Con-Way plans, that bind them together with the members of the proposed Subclass. Plaintiffs have shown by a preponderance of the evidence that, with respect to their breach of fiduciary duty claims, the common issue of Prudential's compliance with the terms of the plans will predominate over individualized questions of individual beneficiaries' consent or selection of an Alliance Account.

Facing predominant common issues with respect to Plaintiffs' breach of fiduciary duty claim, Prudential attempts to defeat certification by casting doubt on the predominance of common issues with respect to Plaintiffs' prohibited transaction claims and the measure of damages. Prudential argues that Plaintiffs' second claim, that Prudential received more than reasonable compensation for its services in violation of ERISA's prohibited transaction rules, requires individualized determinations on a plan-by-plan basis that defeat predominance. Prudential points out that its service arrangements with its clients vary, with customized pricing for each plan, and argues that a determination of the "reasonable" value of Prudential's services will require evaluating service levels and pricing arrangements for each individual plan to compare each plan's pricing with the market rate for similar services. Opp. 26-27. This argument is perhaps persuasive when applied to the Class, where reasonable compensation calculations would require evaluation of all the Prudential plans; however, the argument overstates the difficulty with respect to the Subclass. The Subclass consists of all beneficiaries under the JPMorgan and Con-Way plans. Determining reasonable compensation for Prudential's services to the JPMorgan and Con-Way plans will require analyzing the pricing and service arrangements of those plans, issues particular to the plans, not to individual beneficiaries. Measuring reasonable compensation for purposes of the Subclass will involve common proof applicable to all members of the Subclass.

Prudential also argues that, to prevail on the merits of their prohibited transaction claim, Plaintiffs must demonstrate that the plan fiduciaries "knew or should have known that the payment tendered to Defendants was unreasonable." Opp. 28. To determine this, Prudential argues, the Court must examine whether the fiduciaries of each plan acted prudently in determining Prudential's compensation, what information they had, and whether they consulted

experts regarding the fee. Opp. 28. These questions can be resolved with respect to the JPMorgan and Con-Way plans by common proof applicable to the entire Subclass, as they involve not individual beneficiaries' conduct, but the conduct of the plan fiduciaries.

Prudential also argues that determining the appropriate amount of disgorgement will require plan- and beneficiary-specific inquiries. However, although the calculation of individual damages is necessarily an individual inquiry, courts have consistently held that the necessity of this inquiry does not preclude class action treatment where class issues, especially concerning liability, otherwise predominate. *See In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 305–06 (3d Cir. 2005); *La Fata v. Raytheon Co.*, 207 F.R.D. 35, 46 (E.D. Pa. 2002) (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977)); *Forman v. Data Transfer Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("[T]he focus of the [predominance] inquiry is directed primarily toward the issue of liability."). The necessity of individual calculations of damages does not defeat predominance in an action for breach of ERISA fiduciary duty. *See also Bauer-Ramazani*, 290 F.R.D. at 460-61 (partially certifying class seeking disgorgement of improperly retained assets in breach of ERISA fiduciary duty claim).

Accordingly, the Court finds that the Subclass satisfies the predominance requirement of Rule 23(b)(3).

**4. <u>The Subclass satisfies the superiority requirement.</u>**

This Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the claims of the members of the Subclass. Rule 23(b) states that matters pertinent to the superiority requirement include: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." *In re Wafarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

The alternative to this class action is myriad individual lawsuits for relatively small amounts of damages. In this case, Plaintiffs represent that each claim involved in this action is for less than $1,000, and that no other litigation is pending against Prudential asserting similar claims. Mot. 23. These claims would prove impractical for potential plaintiffs because litigation costs could dwarf potential recovery. By contrast, the class action vehicle "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." *Id.*; *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 148 F.3d 283, 315-16 (3d Cir. 1998). This Court finds that it is an appropriate forum for this case and that a class action would be manageable, given the predominance of common issues in the claims of the Subclass. Therefore, a class action is a superior method of adjudicating the Subclass members' claims compared to available alternatives.

This Court finds that the Subclass satisfies all the requirements for certification as a Rule 23(b)(3) class, and will next consider the Rule 23(a) requirements.

**B. <u>Rule 23(a) Requirements</u>**

Federal Rule of Civil Procedure 23(a) requires that any proposed class satisfy its four factors, which include numerosity, commonality, typicality, and adequacy of representation:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

> claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Prudential does not meaningfully dispute that the Subclass satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Regardless, this Court analyzes these Rule 23(a) requirements and finds that the Subclass satisfies them.

**1. <u>The proposed Subclass satisfies the numerosity requirement.</u>**

Prudential identifies the number of Subclass members as greater than 1,000. Opp. 33. While "[n]o magic number exists satisfying the numerosity requirement," *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989), the number of Subclass members present in this case easily satisfies the 23(a)(1) requirement. *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

**2. <u>The proposed Subclass satisfies the commonality requirement.</u>**

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984) and *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir. 1987)). "Because the requirement may be satisfied by a single common issue, it is easily met . . . ." *Id.*

In this case, the members of the Subclass all allege that Prudential breached its fiduciary duties under ERISA by making payment through Alliance Accounts, and engaged in prohibited

transactions with the JPMorgan and Con-Way plans. Courts consistently have found that ERISA claims satisfy the commonality requirement. *See, e.g., Brooks v. Educators Mut. Life Ins. Co.,* 206 F.R.D. 96, 101 (E.D. Pa. 2002) ("The fact that this case involves a single claim under ERISA … also supports a finding that the commonality prerequisite is satisfied. Unlike a diversity-based class action, where a court must apply varying state laws for class members from different states, uniform federal law will apply to all class members here."); *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Furthermore, the finding that the Subclass satisfies the predominance requirement favors finding the commonality requirement met, as the "'commonality' requirement is subsumed under, or superseded by, the more stringent . . . 'predominance' inquiry," *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 609 (1997). The Subclass therefore satisfies Rule 23's commonality requirement.

### 3. The proposed Subclass satisfies the typicality requirement.

"[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (quoting *Weiss*, 745 F.2d at 809 n.36). As with the commonality requirement, "[t]he threshold for establishing typicality is low." *Zlotnick v. TIE Commc'ns, Inc.,* 123 F.R.D. 189, 193 (E.D. Pa. 1988). The Third Circuit has noted that "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal,* 43 F.3d at 58. Here, the members of the Subclass

base their claims on Prudential's breach of fiduciary duty through its failure to pay pursuant to the terms of the JPMorgan and Con-Way plans. These claims challenge the same allegedly unlawful conduct, thus satisfying the typicality requirement.

**4. <u>The proposed Subclass satisfies the adequacy of representation requirement.</u>**

The fourth and final element of Rule 23(a) requires that the Court determine that the named Plaintiffs and class counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The class members are adequately represented if (1) the interests of the class representative do not conflict with the class members' interests and (2) class counsel are experienced, vigorously prosecuted the action, and acted at arm's length from the defendant. *See In re Wafarin Sodium Antitrust Litig.*, 391 F.3d at 532. As discussed above, the Court finds that the named Plaintiffs' claims are typical of the Subclass, and the Court can find no apparent conflict of interest: they share a common interest with the other members of the Subclass. The named Plaintiffs and all other members of the Subclass were participants in the plans.

Moreover, Plaintiffs' counsel have substantial experience in prosecuting class actions of this variety, including the *Owens* action cited above. *See* Exs. 11-14 to Mot., ECF Nos. 164-7, 164-8, 164-9, 164-10. In short, the Court is satisfied that class counsel "possess the expertise to litigate this matter effectively, as evidenced by the quality, timeliness and professional nature of their work" in this case. *Whetman v. IKON (In re IKON Office Solutions Secs. Litig.*, 209 F.R.D. 94, 103 (E.D. Pa. 2002). Accordingly, this Court finds that the Subclass satisfies the requirements of Rule 23(a).

## IV. CONCLUSION

Because this Court finds that Plaintiffs have not demonstrated that their proposed Class meets the predominance requirement of Rule 23(b)(3), this Court denies their motion as to the proposed Class. However, this Court finds that the proposed Subclass satisfies the Rule 23 requirements for certification, and thus grants Plaintiffs' motion as to the Subclass.

A separate Order will issue.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge