UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CLARK R. HUFFMAN;
PATRICIA L. GRANTHAM;
LINDA M. PACE; and
BRANDI K. WINTERS, *individually and
on behalf of a class of all others similarly situated*,

Plaintiffs
v.                                                    No. 2:10-cv-05135

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

Defendant

# O P I N I O N

**Motion for Attorneys' Fees, Expenses and Incentive Awards, ECF No. 192—Granted
Final Motion for Approval of Class Action Settlement, ECF No. 193—Granted**

**Joseph F. Leeson, Jr.**                                                April 4, 2019
**United States District Judge**

After nearly nine years of litigation, this ERISA[1] class action has reached an amicable resolution. Plaintiffs present a motion for final approval of a class action settlement and a motion for payment of attorneys' fees and expenses to Class Counsel and incentive awards to the Class Representatives. For the reasons discussed below, these motions are granted.

**I.     BACKGROUND**

Plaintiffs are the beneficiaries of life insurance plans obtained by deceased family members, who worked for two separate companies, JPMorgan Bank and Con-way Incorporated. Defendant Prudential Insurance Company of America contracted to provide the plans for both companies. When benefits became due, Prudential's default practice was not to send the

---

[1] *See* Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

beneficiaries a single check, but instead to open a bank account, called an Alliance Account, containing the amount of benefits due against which the beneficiaries could draw checks. These "retained asset accounts" allowed Prudential to retain and invest the funds until drawn upon and thereby make a profit. In September 2010, the named Plaintiffs sued on behalf of themselves and similarly situated beneficiaries of Prudential policies, alleging that this means of payment violated Prudential's contractual obligation to pay benefits "in one sum." The Plaintiffs asserted claims for violation of fiduciary duties under ERISA or, in the alternative, state law, and violations of ERISA's prohibited transaction provisions. *See* Complaint, ECF No. 1.

On December 6, 2017, the Court granted partial summary judgment as to liability in favor of Plaintiffs, finding that because the terms of the plans required payment in "one sum," and establishing Alliance Accounts was not payment in "one sum," Prudential failed to comply with the payment terms of the JPMorgan and Con-Way plans and thus breached its fiduciary duties under ERISA.[2] Summ. J. Op., ECF Nos. 161-62. The Court denied summary judgment on the question of whether Prudential's arrangement violated ERISA's prohibited transaction provisions, finding that issues of fact remained.

On January 29, 2018, the Court certified a subclass of plaintiffs under Rule 23(b)(3), limited to beneficiaries of the JPMorgan and Con-Way plans for which Prudential established an alliance account between September 30, 2004, and October 31, 2011. Class Cert. Op., ECF No. 175. After the deadline for completion of class discovery had expired in September 2018, the parties advised the Court of a settlement in principle. On November 21, 2018, the Court granted preliminary approval of the proposed settlement, determining that it was "fair, reasonable, and adequate," authorized notice to the members of the class, and set deadlines for class members to

---

[2] The Court entered summary judgment in favor of Defendant on the state law breach of fiduciary duty claim because it was an alternative to the ERISA fiduciary duty claim.

object to the proposed settlement and give notice if they intended to appear at the final approval hearing. ECF No. 191.

The Settlement Administrator distributed the court-approved notice to Class Members in accordance with this Court's Order and represents that 96.66% of Class Members were successfully notified. *Id.* ¶¶ 3-6. No Class Member filed an objection or notice of intent to appear at the final approval hearing. *Id.* ¶¶ 9-10.

After the notice period, Plaintiffs filed a motion for final approval of the class action settlement. The Settlement Agreement provides for the creation of a $9,000,000 settlement fund, which will be distributed to class members according to a specific distribution plan after fees and expenses are deducted. Settlement Agreement ¶¶ 1.6, 1.9, 1.15, 7.1-7.2.3, 9.1-9.5.7, ECF No. 190-1. The distribution plan provides that each Class Member will receive a share of the Settlement Fund that is proportional to the amount of interest that was credited to his or her Alliance Account compared to Prudential's return on investment of the class members' death benefits. Distribution Plan ¶ 3, ECF No. 190. The Settlement Administrator estimates an average payment to Class Members of approximately $1,000. Declaration of American Legal Claim Services, LLC ¶ 11, ECF No. 193-2.

Plaintiffs also filed a motion requesting attorneys' fees in the amount of $3,000,000, reimbursement of expenses in the amount of $67,763, and an incentive award in the amount of $5,000 to each Class Representative.

The Court held a final approval hearing on April 2, 2019, at which counsel for all parties appeared. No Class Members appeared at the hearing, and Class Counsel represented that only thirty-one potential Class Members requested to be excluded.[3]

## II. ANALYSIS

### A. The Court concludes that the Settlement Agreement is fair, reasonable, and adequate under Rule 23.

The claims of a certified class may be settled only with court approval, and the court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (citation omitted).

Effective December 1, 2018, Rule 23(e)(2) was amended to list factors to guide a court's fairness inquiry, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[3]  According to the Exclusion List presented by Class Counsel at the hearing, the following potential Class Members requested to be excluded from the settlement: Kay Irene Force, Sandra J. Walters, Joann Vollmer, Theresa V. Thompson, Kathleen Dean, Christopher J. Boccumini, Erika Bauer, Carol Underhill, Gail Sentoff, John Barth, Priscilla Morales, Janet Monnier, Vivian Fernino, Theresa Andreula, Margaret Bereza, Kathleen McGoldrick, John P. Mulligan, Camblor Farhne, Joseph Polichetti, Gail M. Rummell, Robert W. Johnson, Joan G. Hutchison, William Weil, Ronald W. Theryoung, Rita Shelton, Hsin-I Langlois, Elizabeth C. Orr, Eldonna Trukawinski, Patricia Ryan, and Patricia Thernell.

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair and explain that the goal of the amendment is not to displace any such factors, but rather to focus the parties the "core concerns" that motivate the fairness determination.[4] Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes. Courts within the Third Circuit evaluate class action settlements under the nine factors outlined in *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975), which require a court to consider:[5] (1) the complexity,

---

[4] The Committee Notes that the various multi-factor tests can take on a life of their own and obscure the heart of the fairness inquiry:

> A circuit's list might include a dozen or more separately articulated factors. Some of those factors--perhaps many--may not be relevant to a particular case or settlement proposal. Those that are relevant may be more or less important to the particular case. Yet counsel and courts may feel it necessary to address every factor on a given circuit's list in every case. The sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2).

Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes.

[5] In their motion, Plaintiffs identify and analyze the proposed settlement under a second set of factors originating in *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). The *Prudential* court recognized a "sea-change in the nature of class actions" since the *Girsh* decision and outlined an expanded set of factors to consider "when appropriate." *Id.* A court does not need to address the *Prudential* factors separately when they overlap with the *Girsh* factors. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489 (3d Cir. 2017) (recognizing *Prudential* factors as expansion of *Girsh* to include "additional nonexclusive factors" but affirming in relevant part district court that approved settlement and considered only *Girsh*); *Haas v. Burlington Cty.*, No. CV 08-1102 (NLH/JS), 2019 WL 413530, at *5 n.4 (D.N.J.

expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004)(citing *Girsh*).[6]

The first *Girsh* factor, the complexity, expense, and likely duration of the litigation, weighs in favor of the settlement. This case was first filed in 2010 and has been contested all along. It involves subtle issues arising under ERISA, a statutory framework which the Supreme Court of the United States has described as "enormously complex." *Mertens v.*

---

Jan. 31, 2019) ("Since there is much overlap in this case [with *Girsh*], the Court finds it unnecessary to conduct a separate analysis of the *Prudential* factors."). Because the Court's analysis of the *Girsh* factors and requested attorneys' fees outlined below encompasses the *Prudential* factors, it will not address those factors separately.

[6] As Plaintiffs recognize in their brief, the Third Circuit Court of Appeals has stated that preliminary approval of a class action settlement "establishes an initial presumption of fairness when the court finds that: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the settlement's proponents are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod . Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). At least one court of this District has recognized that this presumption of fairness creates a paradox in light of the simultaneous *Warfarin Sodium* requirement of "even more scrupulous [review] than usual" for combined certification/settlement. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 760 n.4 (E.D. Pa. 2016).

Regardless, Plaintiffs have satisfied the requirements for the presumption of fairness. As this Court found when it granted preliminary approval, "[t]he parties, both represented by experienced and able counsel, have reached the proposed settlement after eight years of litigation, which included extensive discovery. Moreover, the proposed settlement promises a significant recovery for individual class members and appears to be the product of arm's-length negotiations between the parties." Preliminary Approval Op. 1 n.1, ECF No. 191. No class members have objected to the Settlement Agreement. Therefore, the presumption of fairness applies.

*Hewitt Associates*, 508 U.S. 248, 262 (1993). The parties have engaged in considerable motion practice, and Plaintiffs represent that a trial would likely result in additional motions *in limine* and motions to exclude expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Additionally, Plaintiffs describe a post-trial appeal as "inevitable" because "there are aspects of this Court's rulings on class certification and summary judgment with which each side disagrees." Mot. for Approval 7. The settlement avoids what promises to be a complex and protracted resolution to an already complex and protracted case; therefore, the first *Girsh* factor favors approving the settlement.

The second *Girsh* factor, the reaction of the class to the settlement, "attempts to gauge whether members of the class support the settlement." *In re Prudential*, 148 F.3d at 318. None of the Class Members who received notice have objected and only thirty-one requested to be excluded; therefore, this factor favors approval.

The third factor requires the Court to consider the stage of proceedings and the amount of discovery completed. Courts must determine "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium*, 391 F.3d at 537. The Court has no doubt that counsel for all parties fully appreciated the merits of their respective positions. Over the course of almost nine years, the parties conducted multiple rounds of written discovery, depositions, and significant motion practice, including a motion to dismiss, ECF Nos. 25-26, 28; a motion for judgment on the pleadings, ECF Nos. 40-41, 44-46; a contested motion to amend the Complaint, ECF Nos. 90-92, 100; multiple *Daubert* motions, ECF Nos. 125, 134, 138-139, 166, 170, 180-81; multiple motions for summary judgment, ECF Nos. 69; 149-153, 161-162; and multiple motions for class certification. ECF Nos. 65, 119, 123-124, 138, 141, 143-144, 146, 164-165, 169, 173-175. The Court addressed the merits of

Plaintiffs' claims on summary judgment and found them entitled to partial summary judgment on the breach of ERISA fiduciary duty claim. Additionally, the case was set to proceed to trial on January 25, 2018, and was only continued on January 12, 2018, ECF No. 172, after the parties had completed substantial trial preparation. The third *Girsh* factor weighs in favor of approving the Settlement Agreement.

The fourth and fifth *Girsh* factors consider the risk of establishing liability and damages at trial and "weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin Sodium*, 391 F.3d at 537. "The court must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action." *Lachance v. Harrington*, 965 F. Supp. 630, 639 (E.D. Pa. 1997) (citing *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995)). Class Counsel recognize that, although the Court granted summary judgment in Plaintiff's favor on the breach of ERISA fiduciary duty claim, continuing to trial still poses significant risks. Whether Plaintiffs can prevail on their ERISA prohibited transaction claim remains uncertain. *See* Summ. J. Op. 21-23. Additionally, Prudential has raised several defenses that could limit the amount of disgorgement to which class members would be entitled. Mot. for Approval 10. Therefore, Plaintiffs' success is uncertain, whereas the Settlement Agreement provides for immediate and sizeable monetary recovery. The fourth and fifth *Girsh* factors weigh in favor of the settlement.

The likelihood of maintaining class certification if the action were to proceed to trial, the sixth *Girsh* factor, weighs in favor of approval but deserves only minimal consideration. *Girsh*, 521 F.2d at 157. "There will always be a 'risk' or possibility of decertification, and

consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential*, 148 F.3d at 321. As such, in a settlement class, this factor becomes essentially "toothless." *Id.*

The seventh *Girsh* factor, Defendant's ability to withstand a greater judgment, generally only affects the analysis when "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *In re Flonase*, 951 F. Supp. 2d at 744. The parties present no evidence that Prudential's financial circumstances limited the amount of the settlement; therefore this factor is neutral.

The eighth and ninth factors, the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation, ask the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Prudential provided the Settlement Administrator with the transaction histories for all the funds due to the Class Members along with data showing the yields on Prudential's investment portfolio for the relevant time period; using this data, the Settlement Administrator determined that Prudential's spread on the investment of the Class Members' funds was $9.4 million. Declaration of M. Scott Barrett ¶ 8, ECF No. 192-5. Under the Settlement Agreement, Prudential will pay $9 million, over ninety-five percent of the spread Prudential earned from the improper investment. Given this large percentage of the best possible recovery and the risks associated with trial discussed above, the settlement figure

represents an excellent value for the case. The eighth and ninth *Girsh* factors weigh in favor of the settlement.

In total, the *Girsh* factors favor approving the settlement. The Court therefore finds that the settlement is fair, reasonable, and adequate, and grants approval.

**B. The requested attorneys' fees are reasonable.**

Class Counsel request an award of $3 million in attorneys' fees. "In a certified class action, the court may award reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). District courts have substantial discretion in determining attorneys' fees but must clearly set forth their reasoning for fee awards. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). "Attorneys' fees are typically assessed through the percentage-of-recovery method or through the lodestar method. . . . The percentage-of-recovery method applies a certain percentage to the settlement fund. . . . The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (internal citations omitted). "Regardless of the method chosen . . . [the Third Circuit] has suggested that it is sensible for a court to use a second method of fee approval to cross-check its initial calculation." *In re Rite Aid*, 396 F.3d at 300.

"The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998), *quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). The Third Circuit has

developed ten factors that a district court must consider in determining what constitutes a reasonable percentage fee award:

> (1) the size of the fund created and the number of beneficiaries,
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel,
> (3) the skill and efficiency of the attorneys involved,
> (4) the complexity and duration of the litigation,
> (5) the risk of nonpayment,
> (6) the amount of time devoted to the case by plaintiffs' counsel,
> (7) the awards in similar cases,
> (8) the value of benefits attributable to the efforts of class counsel,
> (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and
> (10) any innovative terms of the settlement.

*See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195, n.1 (3d Cir. 2000), and *In re Prudential*, 148 F.3d at 336-340.[7] The Court applies the *Gunter* factors and concludes that this award is reasonable.

The most significant factor in setting fees is the result obtained for the class. *Manual for Complex Litigation* (4th) § 14.121 (2004) ("The greatest emphasis is the size of the fund created, because a common fund is itself a measure of success and represents the benchmark from which a reasonable fee will be awarded.")(citations and internal quotations omitted). Here, counsel obtained an excellent result for the class, negotiating a settlement payment of $9 million, equal to ninety-six percent of the spread Prudential earned by its improper investment of Class Members' funds. As discussed, this will likely result in a payment of around $1,000 to each Class Member. This is an excellent result, and this factor supports Class Counsel's fee request.

The second *Gunter* factor, the presence or absence of objections by class members, supports the request for fees because no Class Members have objected.

---

[7] *Gunter* identified only the first seven factors listed; the Third Circuit Court of Appeals suggested the remaining three factors in *In re Prudential*. *See In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006).

The third factor, the skill and efficiency of class counsel, strongly supports the fee request. Class Counsel are experienced in complex litigation; in fact, this Court previously concluded that Class Counsel have "substantial experience in prosecuting class actions of this variety" and "possess the expertise to litigate this matter effectively, as evidenced by the quality, timeliness, and professional nature of their work in this case." ECF No. 174 at 19. Additionally, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re AremisSoft Corp. Securities Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)). Given the excellent result obtained in this case, this factor weighs in favor of the fee requested.

The fourth factor considers the complexity and duration of the litigation. This case originated in 2010 and has been vigorously and ably litigated by counsel throughout. As recognized in the analysis of the Settlement Agreement, counsel conducted significant discovery and exhaustive motion practice that required grappling with subtle questions of law under ERISA. Class Counsel's efforts resulted in entry of summary judgment in favor of Plaintiffs on the breach of ERISA fiduciary duty claim and certification of the Class. The requested fee award appropriately compensates Class Counsel for their professional and skillful handling of this case.

Next, the Court considers the risk of nonpayment and the amount of time devoted to the case by counsel. Class Counsel took this case on a contingency fee basis, which required a significant investment of resources and presented a substantial risk of receiving no payment at all. Counsel point out that they have litigated to final resolution seven cases challenging insurers' decisions to use retained asset accounts to settle claims for death benefits under ERISA-governed plans: of those cases, three settled, but the plaintiffs lost in four others. Mot. for Attys' Fees 6. Moreover, Class Counsel invested significant time in this case: as of December 31, 2018, they

had expended over 5,749 hours in this matter. Flitter Cert. ¶13, ECF No. 192-3; Bell Decl. ¶10, ECF No. 192-4; Barrett Decl. ¶11, ECF No. 192-5; Rossman Decl. ¶8, ECF No. 192-6. The time Class Counsel devoted to this case despite the significant risk of nonpayment supports their fee request.

Next, the Court compares the requested award with awards in similar cases. Percentage fee awards in common fund cases often fall between nineteen and forty-five percent of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995). Class Counsel request one-third of the settlement fund, which is the "benchmark" percentage for an award to counsel. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 768 (E.D. Pa. 2016). Courts within the Third Circuit routinely award fees at similar percentages. *See In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003) (awarding counsel in securities fraud class action one third of $7 million common fund established through settlement of action where counsel zealously litigated complex action for over three years); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 434 (E.D. Pa. 2001) (approving attorneys' fees amounting to thirty-three percent of $48 million settlement in securities class action after six years of litigation featuring extensive discovery and significant motion practice); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (awarding fees equal to one third of settlement amount after two years of litigation of complicated RICO issues and substantial motion practice). The Court concludes that a fee equal to one third of the settlement fund is reasonable compared to awards in similar cases.

The next factor considers whether the entire benefit of a settlement results from class counsel's efforts or whether counsel was assisted by someone or something else, like a

government investigation. *In re AT&T Corp.*, 455 F.3d at 173. This settlement results purely from the efforts of counsel and therefore this factor favors the requested fee.

The next *Gunter/Prudential* factor directs the Court to estimate what percentage fee would have been negotiated had the case been subject to a private contingent fee arrangement from the start. In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery," but courts have recognized that "[i]t is extremely difficult to determine what fee would have been negotiated at the outset of litigation" in retrospect. *In re Flonase Antitrust Litig.*, 291 F.R.D. at 105. Thus, courts sometimes do not give great weight to this "hypothetical exercise" and treat this factor as neutral. *Id.* Although Class Counsel request a fee in line with the range of private contingency rates, the Court treats this factor as neutral, as the long duration and complexity of this case make estimating a likely contingency fee after the fact nothing more than an academic exercise.

Lastly, the Court must consider whether the settlement includes any "innovative" terms. The parties in this case present a straightforward settlement agreement; therefore, this factor is neutral.

On balance, the *Gunter/Prudential* factors demonstrate that Class Counsel's requested fee is reasonable;[8] accordingly, the requested fee is approved.

---

[8] Cross-checking the fee award with the lodestar method of calculation underscores the reasonableness of Class Counsel's request. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305. "Once the lodestar is calculated, '[t]he total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.'" *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 105 (E.D. Pa. 2013) (quoting *Manual for Complex Litig.* (4th) § 14.122 (2004)).

Class counsel together expended over 5,749 hours on this case. Each firm's lodestar is as follows: $269,239 for Flitter Milz PC, Flitter Cert. ¶ 2; $1,197,310.50 for Bell & Brigham, Bell

C. **The Court approves the reimbursement of expenses because they were reasonably incurred and are adequately documented.**

Courts in the Third Circuit have awarded reimbursement of expenses adequately documented and reasonably incurred in the prosecution of a class action, including photocopying, telephone and fax charges, postage, messenger and express mail charges, and legal research charges. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1255 (3d Cir. 1995).

Class Counsel request reimbursement for $67,763 in expenses, including items such as filing fees, photocopying, postage, legal research, and travel. Flitter Cert. ¶13; Bell Decl. ¶11; Barrett Decl. ¶12; Rossman Decl. ¶9. The Court concludes that these expenses are reasonably incurred and adequately documented and awards reimbursement as requested.

D. **The Court approves the incentive awards of $5,000 to each Class Representative.**

"Incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of an entire class.*" In re Flonase*, 291 F.R.D. at 106 (citation and internal quotations omitted). The Third Circuit has stated that incentive awards may be given "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, . . . to recognize their willingness to act as a private attorney general, . . . and to induce an individual to become a named plaintiff." *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1219 (3d Cir. 2018). Courts "routinely approve incentive awards to compensate named plaintiffs for the

---

Decl. ¶ 10; $1,144,348 for Barrett Wylie LLC, Barrett Decl. ¶ 11; $569,391.75 for the National Consumer Law Center, Rossman Decl. ¶ 8. The total lodestar is $3,064,217. Dividing the proposed percentage fee of $3 million by this lodestar amount yields a multiplier of 0.94; in other words, the percentage fee requested is lower than the lodestar estimate. This result confirms the Court's conclusion that Class Counsel have requested a reasonable fee. *See In re Fasteners Antitrust Litig.*, No. CIV.A. 08-MD-1912, 2014 WL 296954, at *8 (E.D. Pa. Jan. 27, 2014) (finding that lodestar cross-check confirms the reasonableness of percentage fee where multiplier was less than one).

services they provided and the risks they incurred during the course of the class action litigation." *In re Flonase*, 291 F.R.D.at 106 (citing cases). Incentive awards typically range from $5,000 to $10,000. *Id.* at 107.

The Class Representatives actively participated in this case for over eight years, and the requested award of $5,000 is at the low end of the typical range. The Court therefore approves the requested awards.

## III. CONCLUSION

For the reasons discussed above, the Court finds that the proposed Settlement Agreement is a fair, reasonable, and adequate resolution of this case. The requests for attorneys' fees, expenses, and incentive awards to the Class Representatives are approved. A separate Order follows.

BY THE COURT:


 */s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge